| 79 | 1 |
|---|---|
| 78 | 490 |
| 79 | 1 |
| 95 | 230 |
| 79 | 1 |
| 114 | 453 |
| 79 | 1 |
| 115 | 229 |
| 79 | 1 |
| s95 | 229 |
| 123 | 20 |
| 123 | 22 |
| 123 | 25 |
| 123 | 31 |
| 123 | 43 |
| 79 | 1 |
| 152 | ¹173 |

## August Blank v. The Township of Livonia.

*Negligence—Municipal corporations—Defective bridges—Notice—Evidence.*[1]

1. Where in a suit against a township for injuries received by the falling of a bridge, caused by the breaking of a stringer which had become weakened by "dry rot," the surface being apparently sound, the main question in controversy is whether the defendant's officers knew or ought to have known of the existence of such defect, no actual notice or knowledge being shown, it is error to exclude the testimony of a professional bridge-builder who built said bridge, as to how long such a stringer usually remains good.

2. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

   *a*—The care and caution required in ascertaining whether timbers in a bridge are sound must necessarily depend in a measure upon the length of time the bridge has been built; and this is especially so in respect to the soundness or unsoundness of the timber from internal decay or "dry rot." The kind of timber also has a bearing upon the subject, and whether round or square.

   *b*—It is common knowledge that some kinds of timber remain sound longer than others, when exposed to the elements.

   *c*—A state of facts once existing is usually presumed to continue, but they are not presumed to have always existed.

   *d*—Townships are not insurers of the safety of the bridges and highways within their limits. The statute imposes upon them the duty of keeping such highways and bridges in a condition reasonably safe and fit for the public travel. But they

---

\* Continued from Vol. 78.

[1] For full digest of points decided, see *Table of Cases Reported.*

are liable for a neglect of this duty only when it is shown that they have had reasonable time and opportunity, after knowledge or notice that such bridge or highway has become unsafe or unfit for travel, to put the same in proper condition for use, and have not used reasonable diligence in the premises after such knowledge or notice.

e—When the defects are open to view, or apparent to persons traveling over the bridge or along the highway, and have existed such a length of time that the officers charged with the duty of keeping such bridge or highway in repair would be considered negligent in not seeing such defects, the jury may presume notice or knowledge of such defects; but this presumption cannot arise from latent and hidden defects.

f—In respect to such latent defects in the timber of a bridge, it is the duty of the highway commissioner to make proper and seasonable inspection to ascertain its condition as to safety for the public travel, and to exercise due care and caution in so doing to find defects, and the kind of inspection and amount of care and caution required of him upon which to predicate negligence in the performance of the required duty will depend upon all the facts and circumstances of the particular case, and the particular neglect of duty must be pointed out.

Error to Wayne. (Gartner, J.) Argued November 7, 1889. Decided December 28, 1889.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Atkinson, Carpenter, Brooke & Haigh,* for appellant.

*J. F. Brown,* for plaintiff.

CHAMPLIN, J. August Blank was injured by the falling of a bridge in the month of May, 1888. He was driving along the bridge with a double team, a wagon, and a light load of dry wood, when the west stringer broke in two places, where the iron rods pass through it to the straining beam above.

The bridge was about 40 feet long and 10 feet high. It was composed of one span of two parallel stringers, which extended the whole length, and were 8 by 10

inches in size. The ends rested upon caps. These string-
ers were supported by a truss consisting of a straining
beam 14 feet long, supported by braces let into the
stringers near the ends, and 14 feet long. Supporting
rods of iron, two in number upon each side, extended
from the ends of the straining beams to the needle beams
below. After the accident the stringer was shown to be
defective on account of a dry rot in the center of the
timber, which was surrounded by a shell of sound wood
upon the surface.

In October, 1887, it was discovered that the bridge was
defective. A bridge-builder made a cursory examination,
pronounced it defective, and made an offer to the com-
missioner of highways to build a new bridge. The com-
missioner told him that it was only necessary to put in a
new stringer on the east side of the bridge. This is the
only notice of any defect which the testimony shows the
officers of the town had, and no particular defect was
pointed out by the bridge-builder. Immediately after
such notice the highway commissioner caused the bridge
to be repaired by putting in a new stringer on the east
side. The defect which was apparent in this stringer was
a split, but he did not find it decayed in the man-
ner the west stringer turned out to be the next
spring. At the time he made these repairs, in October,
1887, he examined the west stringer by chipping and
sounding with his axe, and there was no visible defect,
and he concluded it was all right. The bridge had been
built about eight years, and the stringers were taken
from the same tree, and were swamp oak. Several wit-
nesses called and examined, both for plaintiff and
defendant, testified that they lived near and frequently
crossed the bridge, and never noticed any defect in the
west stringer until it broke.

The defendant called as a witness the man who orig-

inally built the bridge, who was a professional bridge-builder, and asked him how long such a stringer usually remained good. The plaintiff objected to the question, without stating any reason, and likewise, without stating any reason for his ruling, the court sustained the objection. This was error. The main question in controversy was whether the defendant knew, or ought to have known, of the existence of the defect in the west stringer of the bridge. No actual notice of the particular defect was shown. The members of the township board and the highway commissioner, after October, 1887, never heard of the bridge being out of repair, and had no knowledge and no notice of the defect in the west stringer until after the accident. The question was therefore narrowed down to whether they ought to have known it, and that resolved itself into whether they had used due diligence in inspecting the bridge, and due caution and prudence to ascertain and discover defects therein. The care and caution required in ascertaining whether timbers in a bridge are sound must necessarily depend in a measure upon the length of time the bridge has been built; especially is this so in respect to the soundness or unsoundness of the timber from internal decay or "dry rot." The kind of timber also has a bearing upon the subject, and whether round or square. In this case both pieces of timber of which the stringers were made were taken from the same tree, and were swamp oak. Seven months before the accident the east stringer was removed, and replaced by a new one. The timber was sound, but it had split, which made it defective. With this fact before him, there was nothing to lead him to suspect that the other stringer was decayed internally. Nevertheless he inspected it, and tested it in such manner as he could without boring into it. The length of time such timber, in such position and use, usually remained sound, had an

important bearing upon the extent and manner of inspection required of the commissioner. It is common knowledge that some kinds of timber remain sound longer than others, when exposed to the elements; and as bearing upon the care and prudence of the commissioner in making the inspection in October, 1887, the testimony of the bridge-builder, as an expert, ought to have been received. This doubtless would have involved the inquiry and elicited the fact as to the length of time occupied in sapping the vitality of timber which is inflicted with an internal decay or "dry rot," and the necessary and proper means of discovering its existence.

It seems to have been assumed that because the stringer broke from dry rot in May, 1888, it was equally defective from that cause in October, 1887. But there is no such presumption. A state of facts once existing is sometimes and usually presumed to continue, but they are not presumed to have always existed. Because the condition of the stringer in May, 1888, was that of a piece of timber in which the center was decayed or rotten, did not authorize the presumption that it was always rotten from the time it was placed in the bridge. On the contrary, it being sound then, it would be presumed to remain sound for such length of time as such timber usually remains sound when exposed as that was.

Townships are not insurers of the safety of the bridges and highways within their limits. The statute imposes upon them the duty of keeping the highways and bridges in repair, and in a condition reasonably safe and fit for the public travel. But they are liable for a neglect of this duty only when it is shown that such township has had reasonable time and opportunity, after knowledge or notice to such township that such highway or bridge has become unsafe or unfit for travel, to put the same in proper condition for use, and has not used reasonable

diligence therein after such knowledge or notice. Laws of 1887, Act 468, § 2.

When the defects are open to view, or apparent to persons traveling over the bridge or along a highway, and have existed such a length of time that the proper officers whose duty it is to see that the highway is kept in repair would be considered negligent in not seeing such defects, then the jury may presume notice or knowledge of such defects; but this presumption cannot arise from latent defects not open to view.

In respect to latent defects in the timbers of a bridge, it is the duty of the highway commissioner to make proper and seasonable inspection to ascertain its condition as to safety for the public travel, and to exercise due care and caution in so doing to find defects, and the kind of inspection and the amount of care and caution required of him upon which to predicate negligence in the performance of the required duty will depend upon all the facts and circumstances of the particular case, and the particular neglect of duty must be pointed out.

In this case there was no defect apparent, and no actual knowledge by or notice to defendant of the defect which existed, and through which the accident was caused. And it was not pointed out or shown what the commissioner of highways ought to have done which he did not do to discover the defect in the stringer complained of.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.