W. F. CORBIN & CO. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.    July 13, 1910.)

No. 2,018.

1. EVIDENCE (§ 129*)—COMPETENCY—QUALITY OF MANUFACTURED PRODUCT—
   PRODUCT MADE UNDER SIMILAR CONDITIONS.
      In a proceeding by the United States under Rev. St. § 3455 (U. S. Comp.
   St. 1901, p. 2279), for the forfeiture of whisky contained in the distiller's
   original barrels, but alleged to be other than that contained in such barrels when they were branded and marked by the gauger, it was competent
   for the government to introduce in evidence tabulated analyses of samples of the whisky in such barrels showing the per cent. of its congeneric
   properties and for comparison similar analyses of whisky taken from a
   large number of barrels produced by the same distillery under the same
   process, out of material in the same proportions and of substantially the
   same grade, placed in barrels of the same character of wood, treated in
   the same manner, and stored in the same warehouse under practically

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the same conditions as to moisture and temperature, much of such whisky having been made in the same year, some in different years and a portion on the same day as some of the seized whisky, and the testimony being given by expert chemists who made the analyses.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 129.*]

2. EVIDENCE (§ 76*)—SUFFICIENCY—PRESUMPTION FROM FAILURE TO PRODUCE EVIDENCE.

The silence of a party as to a matter of which he has knowledge cannot authorize a finding against him on an issue upon which the other party has the burden of proof, where there is a total lack of affirmative proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 96; Dec. Dig. § 76.*]

3. EVIDENCE (§ 67*)—PRESUMPTIONS—EXISTENCE OF CONDITION PRIOR TO TIME SHOWN.

While a given condition, shown to exist at a given time, may be presumed to have continued, there is not, on the other hand, any presumption that it existed previous to the time shown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 88; Dec. Dig. § 67.*]

4. INTERNAL REVENUE (§ 46*)—PROCEEDING FOR FORFEITURE—RECEIVING SUBSTITUTED STAMPED PACKAGES.

In a proceeding by the United States under Rev. St. § 3455 (U. S. Comp. St. 1901, p. 2279), for the forfeiture of whisky contained in the original distiller's barrels, but in which it is alleged that the whisky is other than that contained in the barrels when they were branded and marked by the gauger and that the claimants in whose possession the barrels were found received the same in such substituted condition with intent to defraud, the burden rests on the government to prove that they were in that condition when so received, and such fact cannot be inferred from the fact that they were in such condition when seized.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 46.*]

In Error to the District Court of the United States for the Southern District of Ohio.

Proceeding by the United States against Nine Barrels of Whisky, W. F. Corbin & Co., claimants. Judgment for plaintiff, and claimants bring error. Reversed.

A. J. Freiberg, for plaintiffs in error.

Sherman T. McPherson, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

McCALL, District Judge. This is a proceeding in error to reverse a judgment of forfeiture entered in the District Court of the United States for the Western Division of the Southern District of Ohio.

The information filed on behalf of the United States contains two counts.

The first is under Rev. St. § 3455 (U. S. Comp. St. 1901, p. 2279), and the second under Rev. St. § 3326 (p. 2169).

The court directed a verdict of not guilty as to the second count, and submitted to the jury the question of guilt as to the first count, which resulted in a verdict for the government. Upon this verdict the lower court pronounced judgment, and the claimants prosecute a writ of error to this court.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

There are 56 errors assigned. At the hearing, and on the brief, counsel for claimants condenses the errors assigned, and treats them under two general heads.

(1) The court erred in not excluding the testimony offered by the government, comparing the analysis of the samples of the seized whisky with the analysis of the samples of whisky taken from the bonded warehouse.

(2) There is no proof tending to establish the allegation that claimants received the whisky in the substituted condition.

Section 3455, Rev. St., provides as follows:

"Whenever any person sells, gives, purchases, or receives any box, barrel, bag, vessel, package, wrapper, cover, or envelope of any kind, stamped, branded, or marked in any way so as to show that the contents or intended contents thereof have been duly inspected, or that the tax thereon has been paid, or that any provision of the internal revenue laws has been complied with, whether such stamping, branding, or marking may have been a duly authorized act or may be false and counterfeit, or otherwise without authority of law, said box, barrel, bag, vessel, package, wrapper, cover, or envelope being empty, or containing anything else than the contents which were therein when said articles had been so lawfully stamped, branded, or marked, by an officer of the revenue, he shall be liable to a penalty of not less than fifty nor more than five hundred dollars. And every person who makes, manufactures, or produces any box, barrel, bag, vessel, package, wrapper, cover, or envelope, stamped, branded or marked as above described, or stamps, brands, or marks the same as hereinbefore recited, shall be liable to penalty as before provided in this section. And every person who violates the foregoing provisions of this section, with intent to defraud the revenue, or to defraud any person, shall be liable to a fine of not less than one thousand nor more than five thousand dollars, or to imprisonment for not less than six months nor more than five years, or to both, at the discretion of the court. And all articles sold, given, purchased, received, made, manufactured, produced, branded, stamped, or marked in violation of the provisions of this section and all their contents shall be forfeited to the United States."

The information charges claimants with receiving and having in their possession, with intent to defraud, certain nine distillers' original packages (barrels) of whisky, which packages did contain distilled spirits other than the contents which were therein when said packages (barrels) were lawfully stamped, branded, and marked by a duly appointed officer of the revenue.

We are satisfied that, under the evidence, the jury was warranted in finding that the nine barrels in question contained distilled spirits other than the contents which were in them when they were lawfully stamped, branded, and marked; that is, when they were taken from the bonded warehouse, if the testimony offered by the government in support of the charge is competent, and to the admission of which claimants' counsel duly excepted. It would unduly lengthen this opinion to recite in detail the proceedings incident to the manufacture of whisky from the selection of the raw material until it is barreled and placed in a bonded warehouse, further than to say that it is the purpose of the distiller to produce as near as possible a uniform grade of whisky, and to this end great care is taken in the selection of the raw material and its treatment, from the time it is received on the premises through all the different stages, until converted into whisky, barreled and stored in the warehouse. Each

day's product is the same as every other day's product, just as near as human skill can make it. The evidence upon which the government relied for a conviction below, and to which the claimant objected on the trial, was of an expert character.

The nine barrels of whisky which were seized were distilled by N. P. Squibb & Co. Expert chemists took from each of these barrels a small portion, and analyzed it, to ascertain its congeneric properties. They also took from the warehouse of Squibb & Co. small portions from 43 barrels of whisky and analyzed each of them to ascertain their congeneric properties. The whisky in these 43 barrels was made in the years, as follows: Five barrels in 1900; nine in 1901; five in 1902; five in 1903; five in 1904; five in 1905; two in 1907; and seven in 1908. The whisky in six of the seized barrels was made in 1901; two in 1902; and one in 1904. This last barrel and five barrels from which samples were taken from the warehouse for the purpose of comparison were made on the same day, from the same mash, and stored in the same warehouse, under same conditions as to temperature and moisture.

The results of these analyses were tabulated and introduced in evidence at the trial. We have neither time nor inclination to review this table, nor is it necessary. It discloses a marked and uniform difference in the congeneric properties between the whisky seized and the samples taken from the warehouse for the purpose of comparison, while there was only a very slight difference in the proof. To illustrate: Take the analysis of the barrel of seized whisky that was made in 1904 and five barrels taken for comparison which were made on the same day, out of the same run, and we find that the sum of the congeneric properties, acids, esters, aldehydes, furfurol, and fusel oil, of the seized barrel to be 101.1, and that of the barrels taken for comparison range from 291.3 to 337.1, while the proof of the seized barrel is 105, and that of the other ranges from 104 to 105. This table discloses that relatively the same differences exist between the barrels of the seized whisky, the product of a given year, and the barrels taken for comparison, the product of the same year, and of different years. If this evidence is competent, it is sufficient to sustain the verdict of the jury. Counsel for the claimants stoutly insists that it is incompetent, and that it should not have been admitted. It is conceded that for commercial purposes the product of the Squibb Distillery is practically the same, but it is insisted, that chemically it is not.

It is contended that these whiskies are manufactured in different years, at different seasons of the year, out of material necessarily different in many particulars, although of the same character, and in the same proportion, and that it is not possible to produce from day to day, or from year to year, whiskies that are chemically the same. It is urged by counsel for claimants that it was the duty of the government to have proven affirmatively, before going to the jury with the comparison of chemical analysis, that the whiskies, at the time of their manufacture, up to the time of the seizure of the whisky in question, contained the same chemical constituents and properties, and that they must have proved this with such degree of

particularity as reasonably to exclude all rational hypotheses to the contrary. Many authorities are cited on the brief of claimants'. counsel, tending to support this proposition. Wigmore on Evidence, 442; Lake Erie Ry. v. Mugg, 132 Ind. 168, 31 N. E. 564; Emerson v. Lowell Gas Co., 3 Allen (Mass.) 410; Klanowski v. Grand Trunk, 64 Mich. 279, 31 N. W. 275. Especially is Albany Company v. Lundberg, 121 U. S. 451, 7 Sup. Ct. 958, 30 L. Ed. 982, relied upon. That was a case growing out of a breach of contract made in 1880. Lundberg sold to the Albany Company pig iron to be in accordance with an analysis furnished by the seller. This analysis showed in the first brand .03, and in the two other brands .024 of 1 per cent. of phosphorus. The iron, when delivered at the buyer's works and analyzed, showed in the three brands, respectively, .047, .042, and .049 of 1 per cent. of phosphorus. It was refused and returned to the seller, who afterwards sold it for less than the contract price, and sued to recover the difference.

The depositions of Anderson, Fernguist, Dillner, and Cassel were taken and offered in evidence by Lundberg on the trial, and admitted over the objections of the defendant. Fernguist, a chemist, testi-- fied to the analysis made by him of pig iron from the Pershytte furnace in 1878; this furnace being the same at which one of the brands of iron in question was manufactured. The other three witnesses for the most part stated what they had heard as to the analyses of the iron in question, etc. In holding this testimony incompetent, the court said:

"The admission of this testimony in the depositions was duly excepted to, and we are of the opinion that it was incompetent. Much of it, and especially Anderson's remark that this iron was found to be good in the manufacture of steel and iron by Siemens & Martin, was mere hearsay. All the statements of the deponents as to the proportion of phosphorus in the iron in question were based on analyses by other persons of pig iron made in previous years, none of which were produced or their contents proved, with the single exception of Fernguist's analysis of iron from the Pershytte furnace two years before. It is not shown, and cannot be presumed, that a difference of one or two hundredths of 1 per cent. in the amount of phosphorus in pig iron could be detected by observation of the ore or by inspection of the manufacture of the pig iron. Under these circumstances, evidence of the amount of phosphorus in iron made in previous years was wholly irrelevant to the question of the amount of phosphorus in iron made in 1880; and the general expressions of. opinions as to the excellence of the pig iron and the care taken in its manufacture did not render that evidence competent, but rather tended to divert the attention of the jury from the real issue which was whether the particular iron tendered by the plaintiff to the defendant conformed to the express warranty in the contract between them."

The question in the Lundberg Case was, as we see, Did the iron tendered meet the requirements of the terms of sale? The evidence of that fact was readily ascertainable by an analysis of the iron delivered, and evidence as to what per cent. of phosphorus was present in other iron was clearly incompetent.

The other case relied upon by claimants—United States v. Graf, 208 U. S. 198, 28 Sup. Ct. 264, 52 L. Ed. 452—holds that:

"The sale of a barrel of whisky, stamped, branded and marked so as to show that the contents have been duly inspected, and the tax thereon paid, into which a nontaxable substance has been introduced after such stamping,

branding and marking by an officer of the revenue, does not authorize a seizure and forfeiture thereof to the United States under the provisions of section 3455, Rev. St."

That case does not decide that evidence that a barrel of whisky contains a nontaxable substance, such as caramel, is not competent evidence to be considered, together with other competent evidence, in determining whether or not a taxable substance has been introduced into a barrel of whisky in violation of section 3455, Rev. St. It is there decided that it is not a violation of section 3455, Rev. St., to introduce into a barrel of whisky a nontaxable substance, and therefore whisky so treated is not subject to seizure for that cause.

We are of opinion that the Graf Case has no application to, and that the Lundberg Case is clearly distinguishable from, the case at bar. Here we have whiskies seized and analyzed. The analysis discloses certain per cent. of congeneric properties. An analysis is made of the whisky used for comparison, produced by the same distillery, under the same process, out of material in the same proportions, and of substantially the same grade, placed in barrels of the same character of wood, treated in the same manner, and then stored in the same warehouse, under practically the same conditions as to moisture and temperature. Much of this whisky was made in the same year, some of it in different years, and a portion of it on the same day as some of the seized whisky. The same chemists analyzed the seized whisky and also the whisky used for comparison. These chemists went upon the witness stand, with their analyses, and with the samples in court, and testified as to the difference in the analyses of each of the seized packages and each of the packages used for comparison. This comparison discloses a marked difference in the congeneric properties, both as to each particular package and as a class.

The rule insisted upon by claimants' counsel is highly theoretical. It requires a condition that is well-nigh impossible of performance. The rule does not require that the conditions incident to the production of the article under consideration shall be exactly the same as that used for comparison, but substantially similar. "The similarity that is required is, in short, a similarity in essential circumstances, or, as it is usually expressed, a substantial similarity; i. e., a similarity in such circumstances or conditions as might supposedly affect the result in question." 1 Wigmore on Evidence, § 442.

Again:

"Accordingly our test would be whether the evidential instances occurred under substantially similar (not identically the same) conditions; i. e., so that the supposed conclusion is at least the more probable, though not the only possible explanation." 1 Wigmore on Evidence, § 442.

"The evidence of experiment is not admissible unless conditions are practically the same or substantially similar. * * * The conditions need not be precisely the same in all cases, and the courts are not all in accord as to just how nearly identical or similar the conditions must be." 2 Elliott on Evidence, § 1252.

In Ames v. Quimby, 106 U. S. 343, 1 Sup. Ct. 116 (27 L. Ed. 100), it was held that:

"The plaintiff, where the quality of goods which he furnished at a given time to the defendant is in question, may show the good quality of like arti-

cles furnished at the same time by him to another party, if he further shows that shoes he furnished to each party were of the same kind and quality."

In Byers v. Railroad, 94 Tenn. 353, 29 S. W. 130, in which the court held to be competent evidence similar to that now before us, the court said:

"The authorities in other states are conflicting upon the admissibility of such evidence, and we have been cited to many cases, all of which we have examined. In our own state it has been held that the evidence of an expert is not incompetent because of an ex parte examination, investigation, or experiment made by him. Nor is such evidence inadmissible because the experiments are made after the suit and trial has begun, and with a view to being used as testimony in the case. The objection in such cases goes not to the competency or admissibility of the testimony, which is a matter for the court to determine, but to its weight and sufficiency before the jury, and especially is this the case where the experiment is made ex parte, and is such that it lies wholly within the power of one party and wholly beyond the power of another party to make such experiment. We have been cited to quite a number of authorities to sustain the contention that such evidence is incompetent and inadmissible in cases where the experiment is not equally within the reach of both parties, but we have not been able to find this doctrine sustained. We do find cases, however, holding that where the experiment is made ex parte it affects its weight; that it was not made after due notice to the opposing party and giving such party opportunity to be present and see the test applied. It is uniformly held that in all such tests, to make them competent, the conditions under which the tests were made must be the same as near as practicable."

We conclude that the conditions under which the contents of the seized barrels and the contents of the barrels taken for comparison were produced and handled were sufficiently similar to justify the admission of the evidence objected to. Burg v. Chicago, etc., R. Co., 90 Iowa, 106, 57 N. W. 680, 48 Am. St. Rep. 419; Nosler v. Chicago, etc., R. Co., 73 Iowa, 268, 34 N. W. 850; Wilson v. State (Tex. Cr. App.) 36 S. W. 587; People v. Levine, 85 Cal. 39, 22 Pac. 969, 24 Pac. 631; Elgin, etc., R. Co. v. Reese, 70 Ill. App. 464; State v. Nordstrom, 7 Wash. 506, 35 Pac. 382; Davis v. State, 51 Neb. 301, 70 N. W. 984; Byers v. Railroad, 94 Tenn. 345, 29 S. W. 128.

We come now to consider the second general assignment as arranged on claimants' brief, viz., there is no proof as to when the substitution was made and as to the fact that claimants received the goods in the substituted condition. This question is raised under the forty-ninth specific error assigned, viz.:

"That the court erred in overruling the claimants' motion made at the close of all the evidence to direct the jury to return a verdict in each case for claimants."

In support of this motion, it is insisted that the government has at most only proven that the barrels of whisky in question were in a substituted condition when seized by the government, and that this is not sufficient, but the government must go further and prove that the whisky was in the substituted condition when received by the claimants, and this it has wholly failed to do.

This assignment of error brings before the court for review the entire evidence, in order that we may determine whether or not there

was any substantial evidence which warranted the jury in finding a verdict for the government.

As we have seen, section 3455, Rev. St., under which this action is brought, provides:

"Whenever any person sells, gives, purchases, or receives any box, barrel, etc., of any kind, stamped, branded ·or marked * * * to show that the contents * * * have been duly inspected, or that the tax thereon has been paid * * * said box, barrel, etc., * *. * being empty or containing anything else than the contents which were therein when said articles had been so lawfully stamped, branded, or marked, etc., * * * he shall be liable to a penalty of not less than fifty dollars or more than five hundred dollars. And all articles sold, purchased, received * * * in violation of this section shall be forfeited to the United States."

The information charges that the claimants received and had in their possession, with intent to defraud, the nine distiller's original packages of whisky, which contained distilled spirits other than the contents which were therein when said packages were lawfully stamped, branded, and marked by the duly appointed officer of the revenue.

In their answer filed to the information, claimants aver that:

"Answering the allegations contained in the first article of the said information, the said claimants deny that they did then and ·there or at any time or ever or at all receive and have in their possession the said· nine distiller's original packages (barrels) with intent to defraud, and deny that the said packages (barrels) did then and there or at any time or ever or at all contain distilled spirits other than those which were therein when said packages (barrels) were lawfully stamped, marked, and branded by a duly appointed officer of the revenue."

The answer denies every material allegation in the information, except the fact of the seizure and the ownership of the barrels of whisky in question.

The offense for which it is sought to condemn and have forfeited to the United States the nine barrels of whisky is that they contained distilled spirits other than the contents which were therein when they were lawfully stamped, branded, etc., by a duly appointed officer of the revenue, and that they were received by the claimant in the substituted condition. Under the allegation in the information, it is just as necessary for the government to prove that the claimants received the barrels of whisky in a substituted condition as it is to prove that they were in a substituted condition in the first instance.

Neither of the parties composing the firm of W. F. Corbin & Co., the claimants, was introduced as a witness at the trial, nor did they offer any evidence of any character touching the question as to whether the substitution was made before or after the whisky was received by them.

An attentive examination of the record discloses no direct evidence tending to prove that the barrels were in a substituted·condition when received by the claimants, nor are there, in our opinion, such facts and circumstances proven from which it might.be reasonably presumed that the claimants received the packages in a substituted condition, unless it be assumed that the conduct of the claimants in remaining silent and offering no evidence tending to ·prove that the substitution was made after they received the packages, or, for that

matter, offering any explanation as to when the substitution was made, can be used as a basis for the presumption that the barrels were in a substituted condition when they received them. If the verdict of guilty be predicated upon the assumption that the jury found from the evidence that the barrels of whisky were in a substituted condition when they were received by claimants, it must have been based upon the presumption that the whiskies, having been in that condition when seized, were therefore in that condition when received by claimants.

The only basis for such a presumption disclosed in the record is the silence of the claimants themselves, and the total absence of any explanatory evidence touching the time when the substitution was made. But can such a presumption be indulged?

There is a line of cases which hold that when a party to an action has in his exclusive possession a knowledge of facts which would, if disclosed, tend to throw light upon the transaction which is the subject of controversy, his failure to offer them in evidence may afford a presumption against him. Clifton v. U. S., 4 How. 242, 11 L. Ed. 957; Kirby v. Tallmadge, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; Commonwealth v. Webster, 5 Cush. (Mass.) 316, 52 Am. Dec. 711; Quantity of Distilled Spirits, Fed. Cas. No. 11,494; The Silver Moon, Fed. Cas. No. 12,856; United States v. Chaffee, Fed. Cas. No. 14,774; United States v. Mathoit, Fed. Cas. No. 15,740. These cases hold that the silence of a party to an action may be the basis of a presumption against him to the extent of strengthening other evidence so as to warrant a finding against him, which, in itself, is not sufficient to warrant such a finding, but they do not go to the extent of holding that, where there is a total lack of evidence tending to show guilt, mere silence of the party proceeded against may be the basis of a presumption of his guilt.

Independent of this, however, we do not understand the rule of presumptive evidence to be that if and when the existence of a given condition is proven there is a presumption that it had existed previous to that time. Inhabitants of Hingham v. Inhabitants of South Scituate, 7 Gray (Mass.) 232; Dixon v. Dixon, 24 N. J. Eq. 134; Blank v. Township of Livonia, 79 Mich. 5, 44 N. W. 157; Manning v. Insurance Co., 100 U. S. 697, 25 L. Ed. 761.

In Inhabitants of Hingham v. Inhabitants of South Scituate, supra, Bigelow, J., speaking for the court, said:

"The law presumes that a fact, continuous in its nature and character, like domicil, possession, or seisin, when once established by proof, continues; and, in the absence of evidence to the contrary, legally infers therefrom its subsequent existence. But we know of no rule of law which permits us to reason in an inverse order, and to draw from proof of the existence of present facts any inference or presumption that the same facts existed many years previously."

Dixon v. Dixon, supra, is a case wherein the husband made a settlement by deed upon the wife in 1869. The husband thereafter filed a bill to set aside the deed, upon the ground that before the deed was made the wife had been guilty of adultery, and this was unknown and unsuspected by him when the deed was made.

The court said:

."That she afterwards lived in adultery with the man charged to have been her paramour before the making of the conveyance is too clear for doubt; but her subsequent bad life cannot authorize the inference of her prior guilt, without additional proof, and such proof by no means appears."

In Blank v. Township of Livonia, supra, the court said:

"It seems to have been assumed that because the stringer broke from dry rot in May, 1888, it was equally defective from that cause in October, 1887. But there is no such presumption. A state of facts once existing is sometimes and usually presumed to continue, but they are not presumed to have always existed. Because the condition of the stringer in May, 1888, was that of a piece of timber in which the center was decayed or rotten, did not authorize the presumption that it was always rotten from the time it was placed in the bridge. On the contrary, it being sound then, it would be presumed to remain sound for such length of time as such timber usually remains sound when exposed as that was."

In the case at bar, there is no evidence as to when the substitution was made prior to the time when the whisky in question was seized and analyzed, and under the authorities cited the jury would not be permitted to presume that the substitution had existed prior to the date of the reception of the whisky by claimants.

It may be said further in respect to indulging a presumption for or against the packages of whisky in suit, that count 1 having been drawn under section 3455, and count 2 under section 3326, of the Revised Statutes, and the government having sought in both counts to have the packages condemned and forfeited, that section 3455 alone authorizes a forfeiture, and section 3326 does not. Now, if the silence of the claimants is to be used as the basis of a presumption, may not the presumption of innocence under the second count run in favor of the packages quite as certainly as a presumption of guilt should under section 3455? In other words, there is uncertainty as to whether the substitution was made before or after claimants' receipt of the whisky. If it was made before, then the packages are guilty and forfeiture must result. If it was made after claimants' receipt of the packages, the packages are innocent of any offense of forfeiture, for no such offense is defined by section 3326.

Taking another view of the case, if a presumption is to be indulged under the facts of this case, might not there be a presumption of innocence as well as of guilt? If so, the rule that, where a presumption is equally as consistent with innocence as with guilt, it should be resolved in favor of innocence.

In Union Pacific Coal Co. v. United States, 173 Fed. 740, 97 C. C. A. 581, Judge Sanborn, speaking for the Circuit Court of Appeals for the Eighth Circuit, says:

"There was a legal presumption that each of the defendants was innocent until he was proved to be guilty beyond a reasonable doubt. The burden was upon the government to make this proof, and evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and, where all substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse the judgment of conviction."

181 F.—20

There having been no evidence tending to show when the substitution was made prior to the seizure, we do not think it permissible to presume that the claimants were guilty of having received the whisky in the substituted condition from the mere fact that the whisky was found in that condition in their possession, unexplained, when that fact is as consistent with innocence as with guilt.

Again, if the verdict of guilty be predicated upon the assumption that the jury found from the evidence that the whisky when seized was in the possession of the claimant in the substituted condition, and, therefore, it was subject to forfeiture, then, in that event, the verdict was erroneous.

The information alleged that the claimants "did receive and have in their possession" the packages in question. The phrase "and have in their possession" is not found in section 3455, Rev. St., and will be treated as mere surplusage. The learned trial judge more than once in the charge to the jury said, in substance, that, if they should find that there was a substitution of one whisky for another, then that would justify a verdict in favor of the government under the first count in the information. So, from the wording of the information, together with the charge of the court, the jury might, with reason, have become impressed with the idea that, with the substitution proven, and the ownership of the goods at the time of the seizure admitted, a case in favor of the government was made, and so found.

But the government is seeking to work a forfeiture of the whisky seized, upon the ground alone, as stated in the first count of the information, that claimants received it in a substituted condition with intent to defraud. The property could not, therefore, be forfeited in this proceeding simply because it was in a substituted condition, nor if claimants made the substitution, but only if it was received by claimants in a substituted condition with intent to defraud.

The result is that whether the verdict of the jury be based upon the presumption of guilt, arising from the established facts of substitution and the silence of claimants, though the goods were found in their possession in the substituted condition, or whether it be based upon the proven fact of claimants having in their possession the goods in a substituted condition, it was erroneous and not warranted under the evidence and the law of the case. It results that this case must be reversed and remanded with direction that a new trial be awarded. It is unnecessary to discuss other errors assigned, since they may not arise on a new trial.

The conclusion reached in this case is controlling in No. 2,019; the two cases having been heard together.