**LIVERPOOL & LONDON & GLOBE INS. CO. OF LIVERPOOL, ENGLAND, v. NEBRASKA STORAGE WAREHOUSES, Inc., et al., and six other cases.**

**Nos. 11003–11009.**

Circuit Court of Appeals, Eighth Circuit.

April 27, 1938.

Herbert W. Hirsh, of Chicago, Ill., and Winthrop B. Lane, of Omaha, Neb. (George Wharton Pepper, of Philadelphia, Pa., and Arthur R. Wells, of Omaha, Neb., on the brief), for appellants.

F. S. Gaines, of Omaha, Neb. (Sidney W. Smith, C. F. McLaughlin, Gerald M. Vasak, and James C. Kinsler, all of Omaha, Neb., on the brief), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellee owned a warehouse building in Omaha, Neb., in which a fire occurred about 5:30 o'clock on the afternoon of February 3, 1932. Eight separate actions at law were brought in the state court against eight different companies carrying fire insurance upon the building. In these cases it was alleged that the building was burned and partially destroyed. One of the cases was tried in the state court and a jury found that the damage to the building amounted to $14,500, and the defendant in that case paid and discharged its share of the judgment. In the seven remaining cases the appellee on October 24, 1934, filed amended petitions claiming a total loss under all the policies and praying for damages in excess of $3,000 in each case. The appellants, defendants in the seven cases, then removed them to the District Court. A second amended petition was then filed in No. 11003 against the appellant Liverpool & London & Globe Insurance Company, but not in the other cases. In this pleading a total loss was claimed, and it was alleged that the building had been condemned by the city of Omaha. Issue was joined in this case and liability denied on the grounds that the appellee had violated the provisions of the policy concerning the maintenance of a sprinkler system and that the loss was only partial and not total.

When the case was reached for trial the court on his own motion and over the protests of appellants consolidated the seven cases for trial. At the close of the evidence the court instructed the jury that the appellants had failed to prove negligence of the appellee for failure to maintain the sprinkler system and that the companies had waived this defense. The cases were submitted to the jury only upon the questions of whether the loss was partial or total and the amount of the damages. A verdict finding total loss was returned for appellee upon which judgments were entered for the full amount of the policies, with interest and attorneys' fees.

The appellants seek reversal of the judgments on the grounds: (1) That the court erred in consolidating the seven cases for trial over appellants' protests; (2) that the court erred in taking from the jury the question of whether or not appellee had violated the requirements of the sprinkler clauses attached to the policies; (3) that the evidence is not sufficient to sustain a verdict of total loss; and (4) that it was error to admit in evidence over objections the proceedings taken by the city council of Omaha in condemnation of the insured building long subsequent to the fire.

Appellants' first contention can not be sustained. Section 734 of 28 U.S.C.A. provides that "When causes of a like nature or relative to the same question are pending before a court of the United States * * * the court * * * may consolidate said causes when it appears reasonable to do so." Under this section the consolidation of actions is within the sound discretion of the court. Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706.

It is claimed the order of consolidation constituted abuse of discretion because in six of the cases the issues were not made up until after the trial commenced and they had not been noticed for trial at that term. Rule 2 of the District Court provided: "Assignment of Cases for Trial.—On or before ten days prior to the first day of every term, notice in writing shall be filed with the clerk by either party or their attorneys, in causes then pending on the law side of the court, of any and every case which they may desire to have tried during the term; and no other case on the law docket will be called for trial or tried at that term except by consent of counsel, or for cause shown. And no case should be noticed for trial unless the issues could have been joined under the State statute, prior to the first day of the term."

Assuming, without deciding, that under the circumstances the order was a technical violation of the rule, it cannot be said that such error was prejudicial. The cases were all pending before the court. They all involved the same issues and the same facts. The testimony was the same in all, and they are brought here on the same bill of exceptions. Had all the cases been noticed for trial no valid exception could have been taken to the order of consolidation. If the cases are remanded for a new trial there can be no objection to trying them together. The same attorneys appear in all the cases; and no prejudice appears to have resulted to them. Conceding arguendo that the or-

der of consolidation was improvident in the absence of a continuance until the issues could be made up in all the cases, the record discloses that no request was made for a continuance on that ground; and, since some inconvenience only resulted from the order, appellants are not entitled to a reversal for this alleged error.

The refusal of the court to submit to the jury the issue in respect of the sprinkler system is complained of most emphatically. Each of the policies contains the following clause, or one substantially like it: "This policy being written at a reduced rate, based on protection of the premises by automatic sprinklers, it is a condition of this policy that insofar as the sprinkler equipment and the water supplies therefor, are under the control of the insured, due diligence shall be used by the insured to maintain them in complete working order, and that no change shall be made in said water supplies without the consent of this Company in writing."

Appellee admits that on the day the fire occurred the sprinkler system was out of repair, but contends that due diligence was used to maintain the system in complete working order as the policies require. It therefore becomes necessary for us to review the evidence upon this matter. Since the question was taken from the jury we must take that view of the evidence, with such reasonable inferences as may be drawn therefrom, in a light most favorable to the appellants. Bradford-Kennedy Co. v. Fred G. Clark Co., 8 Cir., 43 F.2d 675.

The testimony shows that the insured building was a six-story warehouse building constructed in 1892. The walls were made of brick and lime mortar, and the floors, beams, and joists of wood. It was protected by two sprinkler systems, one installed in the basement and first three floors and the other in the upper three floors. The system was a dry-pipe valve type intended for use in buildings which are not heated and where water might freeze if permitted to stand in the pipes in cold weather. The pipes, with sprinkler heads distributed throughout the building, are filled with air maintained at a given pressure. A fire acting on the sprinkler head releases the air, thus moving a valve and connecting the pipes with the city water system. The water will then pass through the sprinkler head in that part of the building where the fire occurs.

W. A. Larson, a witness called by appellants, testified that he was foreman in the warehouse, that he had general supervision of the sprinkler system, and that he had been employed in that capacity for 18 years. On the day before the fire occurred he discovered that the air valve was leaking. If the leak was sufficient it would trip the valve and permit the water to pass into the pipes. He turned off the system by closing the gate valve to the city main and took out the leaking valve to reseat it. During the period of his employment he had repaired the valve several times. On this occasion he found the valve somewhat corroded and he proceeded to smooth it down by rubbing it with a soft brick to make it air tight. Not having completed the job that night he left the valve out and the water cut off, and it was still out when he left the building the next evening just before the fire occurred. On the afternoon of the fire he left the work on the valve and unloaded a car of merchandise.

W. H. Sadler, a fire prevention engineer, was called as a witness by appellants. He was a representative of the manufacturers of the sprinkler system. He testified that he had examined the system several times before the fire; that he examined it the morning following the fire; that if a leak occurred in an air valve it was necessary to regrind and reseat it; that he could regrind and reseat a valve in from 2 to 8 hours, depending upon the condition of the valve; and that he would not say that a valve could not be ground by rubbing. it with a soft brick, but that he would hate to do so. He explained what he regarded as the proper method.

Lucius Dunaway, employed by the Nebraska Inspection Bureau as a fire protection engineer, testified that he had inspected the sprinkler system in question several times and was familiar with it. He stated that the valves would corrode over a sustained period and might cause a leak, in which case it would have to be smoothed down. He made his last inspection on January 20, 1932, 13 days prior to the fire. At that time he found the system turned off and a sprinkler head in the south portion of the first story of the building broken as a result of freezing. He called the situation to the attention of Gilbert Magaret, manager of the building. He made an examination on the morning following the fire and found the same sprinkler head still out. He also testified that he talked with Larson on the morning after the fire, and that Larson said at that time that the system had been out of

service continuously after January 20 until the time of the fire.

Larson, called on rebuttal by appellee, testified that about January 20th "there was a head busted on what is known as a dead line"; that he disconnected this line and put a plug in the main line; and that he turned the system on again after he had disconnected the stub line. He remembered seeing Dunaway on the morning following the fire but did not recall their conversation. Gilbert Magaret on rebuttal denied that he talked with Dunaway on January 20th.

As to the effectiveness of the sprinkler system the witness Sadler testified that, if in proper condition, the system would ordinarily put a fire completely out, or that it would turn on sufficient water to cover everything surrounding the fire and hold it in check until someone could put it out. Dunaway testified that "the sprinkler system would control a fire in normal operation."

In withdrawing from the jury the issue of negligence the court charged that there was no evidence to support the burden resting upon the appellants to establish want of due diligence; that the testimony of Dunaway in reference to a conversation with Larson on the morning after the fire was hearsay; that Larson's leaving the repair of the leaking valve to unload a car of merchandise was excusable and was not proof of neglect; and that when appellants learned that the sprinkler system was not in operation at the time of the fire, "if they were going to rely on the breach, then they must elect at that time to do so."

In so instructing the jury the court erred. The evidence upon this question was clearly in conflict. If the jury believed the testimony of Dunaway and Sadler and not that of Larson and Magaret they might infer a want of due diligence in maintaining the sprinkler in operation. If the system were not turned on for 13 days before the fire that situation would support a finding of want of diligence in making repairs. Further, the jury would have been warranted in finding that Larson failed in diligence and was negligent in repairing the leak discovered the day before the fire.

■ The claim that Dunaway's testimony about the conversation with Larson on the morning following the fire should not be considered is without merit. No objection was made to the testimony when it was received. Even if hearsay it is admissible and must be considered when not objected to. Simmons v. Stern, 8 Cir., 9 F.2d 256.

■ It was error, also, to charge the jury that appellants were required immediately after the fire occurred to elect whether or not they would rely upon breach of the sprinkler clause as a defense. There was no waiver of any legal defense. After the fire occurred the parties entered into negotiations respecting the extent of the loss. For so doing the claim is that appellants waived any defense they may have had because the sprinkler system was not in operation and that they are now estopped to urge such defense. But before entering upon such negotiations the parties signed a non-waiver agreement. This instrument provided: "It is hereby mutually stipulated and agreed that any action taken by the Insurance * * * Companies signing this agreement in ascertaining the amount of loss and damage * * * shall not waive or invalidate any of the conditions of the policies of insurance, and shall not waive or invalidate any rights whatever of any party to this agreement."

In view of this agreement it cannot be held that the appellants waived any defense which they might have by reason of their investigation of the extent of the loss and their negotiations with appellee in reference thereto. Our attention is called to no decision holding that it was their duty immediately to elect to rely upon any particular breach of condition or that they would be held to have waived any rights which they might otherwise have.

■ It is the further contention of appellants that the sprinkler clause is a promissory warranty, breach of which relieved the insurers of liability regardless of whether the breach contributed to the loss. The position is untenable in view of section 44-322 of the Compiled Statutes of Nebraska 1929, which provides: "The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss."

■ Both parties agree that the statute is a part of the contracts and must be read into the policies. Westchester Fire Ins. Co. v. Norfolk Building & Loan Ass'n, 8 Cir., 14 F.2d 524. The testimony of Dunaway and Sadler agrees that had the sprinkler system been in operation it would have prevented a spread of the fire at least. This

made a question for the jury. If they found that the sprinkler clause had been breached by failure of appellee to use due diligence to maintain the system in proper working order they might then have found that such breach contributed to the loss.

The appellants requested the court to instruct the jury that the evidence failed to establish a total loss, and that the only question for determination was the extent of the partial loss. The instruction was refused, and the refusal is assigned as error.

The evidence upon the issue of total or partial loss falls into two parts: (1) That which relates to the condition of the building resulting from the fire and the effect of the water used to extinguish it, and (2) the admissibility and effect of the condemnation proceedings.

Passing for the moment the questions relating to the condemnation proceedings, we find the evidence describing the condition of the building immediately after and for some time subsequent to the fire in conflict. We have read it all and as a result have grave doubt as to its sufficiency to sustain a verdict of total loss. Since, however, for reasons already stated, the judgments must be reversed and the cases remanded for a new trial, at which the evidence may not be the same as that in the present record, no useful purpose would be served by discussing it or deciding the question on this appeal.

We proceed, therefore, to a consideration of the contentions in regard to the condemnation proceedings. Appellants raise three questions in regard to these proceedings: First, their admissibility over objections; second, exceptions to the instruction of the court that they could be considered with the other evidence in determining the amount of the loss; and, third, the refusal of the court to instruct the jury that the resolution of condemnation should not be considered as evidence of the condition of the building at or subsequent to the fire or as proof of the amount of damage.

As we view the matter these criticisms of the trial all turn on the question of admissibility, because, if the proceedings were admissible under the circumstances of the case it was the duty of the jury to consider their bearing upon the issue of loss and damage. There could be no other purpose in offering or receiving them in evidence.

Numerous objections were made at the trial to the admission of the order of con-demnation. The only ones necessary to be considered were that the order was irrelevant, that no foundation was laid for its admission, and that the action of the city council was taken long subsequent to the date of the fire.

 The applicable rule of law approved by this court in St. Paul Fire & Marine Ins. Co. v. Eldracher, 8 Cir., 33 F.2d 675, 682, is concisely stated in 26 C.J. 351, as follows: "If by reason of public regulations as to the rebuilding of buildings destroyed by fire, such rebuilding is prohibited, the loss is total, although some portion of the building remains which might otherwise have been available in rebuilding. So, also, if the insured building is so injured by the fire as to be unsafe and is condemned by the municipal authorities, the loss is total."

The rule so stated appears to be supported by the great weight of authority. Dinneen v. American Ins. Co., 98 Neb. 97, 152 N.W. 307, L.R.A.1915E, 618, Ann.Cas. 1917B, 1246; Rutherford v. Royal Ins. Co., 4 Cir., .12 F.2d 880, 49 A.L.R. 814; Larkin v. Glens Falls Ins. Co., 80 Minn. 527, 83 N.W. 409, 81 Am.St.Rep. 286; Lux v. Insurance Co., 221 Mo.App. 999, 295 S.W. 847.

The issue before the court upon the trial was whether the loss was partial or total. To render the order of condemnation admissible it was necessary to show, by competent evidence, that the building was condemned because it was "so injured by the fire as to be unsafe." That is, there must appear to have been a causal relation between the injured condition of the building resulting from the fire and the condemnation. Otherwise the condemnation was not relevant.

In this instance the fire occurred on the evening of February 3, 1932. The building was admittedly seriously damaged, as much, if not more perhaps, by water and ice as by fire. No attempt to rebuild or repair was made. Although the policies gave appellants an option to make repairs neither party ever applied to the proper authorities for a permit to make any repairs. . Immediately after the fire the building was inspected by men selected by appellee and the damage at that time was not claimed to be greater than $30,000. Actions were brought in the state court for partial loss, and in the one tried the jury found the loss to be $14,500. On October 23, 1934, the city engineer made a report to the city council recommending condemnation, in which report he stated that "much serious deterioration has taken place

since my previous recommendations" made several months previously. The amendments to the petitions in the present cases claiming total loss were filed on October 24, 1934, the day following the filing of the city engineer's report. The resolution of condemnation was adopted by the city council on October 30, 1934, nearly 3 years after the fire occurred.

The resolution of the city council, after describing the location of the building, referring to the report of the engineer that it was a nuisance, reciting the fixing of a time of hearing and the giving of notice of such hearing, proceeded:

"Whereas, the City Council did sit at the time and place so fixed and did consider the matter and receive evidence, and upon consideration of such evidence finds that said building by reason of its decay and dilapidated condition and want of repair, is a public nuisance, as defined by the Building Code:

"Therefore, Be It Resolved * * * that the building * * * be and the same is hereby declared to be a public nuisance and the Chief Engineer * * * is hereby ordered and directed to cause such building to be torn down. * * *"

■ The evidence before the city council is not in the record. The resolution does not purport on its face to be based upon a condition resulting from the fire. Rather it appears that the city council attributed the decayed and dilapidated condition of the building in 1934 in part at least to the long neglect to make repairs. The engineer's report which initiated the condemnation does not refer to the fire. In fact nothing in the record brings out any causal connection between the fire and the condemnation. The testimony as to whether the building might have been repaired within a reasonable time after the fire and the deterioration and decay stopped is in conflict. The condemnation is not relevant to that issue. It is based upon the condition found by the city council to exist in 1934. It is true the building may have been irreparable without regard to the deterioration subsequent to the fire. If so, the fact could not be proven by the condemnation. The burden was upon appellee to prove it by direct and proper evidence. The order of the city council was not the equivalent of such evidence.

■ Counsel for appellee say "There is no evidence in the record of anything that would change the condition of the building except the fire, and consequently if the building was in such condition that it was liable to collapse, the change in its condition must have resulted from the fire." This reasoning would have cogency had the condemnation taken place within a short time after the fire occurred, but the events are too remote in this instance to render the condition at one time evidence of the condition at the other. It is a general rule that a prior or subsequent existence is evidential of a later or earlier one. Spund v. Myers, 67 App.D.C. 135, 90 F.2d 380, 383; Berwind White Coal Mining Co. v. City of New York, 2 Cir., 48 F.2d 105; Barker v. Chicago, etc., Ry. Co., 51 Ind.App. 669, 99 N.E. 135, 138; Wigmore, Evidence, § 437; Chamberlayne, Evidence, §§ 1030–1032. But "The limits of time within which the inference of continuance possesses sufficient probative force to be relevant vary with each case. Always strongest in the beginning the inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference." 22 C.J. 86. Indeed it is often said that while a given condition, shown to exist at a given time, may be presumed to have continued, there is not, on the other hand, any presumption that it existed previous to the time shown. W. F. Corbin & Co. v. United States, 6 Cir., 181 F. 296, 304; Parlton v. United States, 64 App.D.C. 169, 75 F.2d 772, 776; Blank v. Township of Livonia, 79 Mich. 1, 44 N.W. 157, 158. In the last-cited case the Supreme Court of Michigan held that the fact that a wooden bridge stringer broke in 1888 as a result of decay and dry rot did not authorize a presumption that it was equally defective in 1887. The cases relied upon by appellee do not support its contention. In Rutherford v. Royal Ins. Co., supra, the fire occurred on February 14, 1924. Two days later the building was inspected by the city authorities and they recommended its condemnation. The order was entered on February 18th. In Dinneen v. American Ins. Co., supra, the fire occurred on March 19, 1908. The building inspector of Omaha, Neb., refused to grant a permit to repair because of the damage by the fire, and the order of condemnation was entered upon the inspector's recommendation and after a hearing on July 17th. In St. Paul Fire & Marine Ins. Co. v. Eldracher, supra, the building was condemned 3 days after the fire occurred and after a permit to repair

had been denied. In all these cases the evidence showed that the condemnation was the proximate result of the fire.

 The court erred in admitting in evidence the condemnation proceedings.

Appellants make the further claim that appellee cannot amend the petitions and allege a total loss after claiming a partial loss only in its original petitions. This claim is without merit. The allowance of amendments to pleadings in the furtherance of justice is within the discretion of the trial court, and an order permitting an amendment will not be disturbed on appeal except in case of abuse of discretion. No abuse is apparent here, and no prejudice is shown.

For the errors pointed out in this opinion the judgments appealed from are reversed and the cases are remanded to the District Court, with instructions to grant a new trial.

Reversed and remanded.