O'KEEFE v. LIVERPOOL, LONDON & GLOBE INSURANCE COMPANY, *Appellant.*

### Division Two, July 6, 1897.

1. **Fire Insurance:** TOTAL LOSS. A building was destroyed by fire. The stone foundation and the upper part of one wall were not destroyed. The testimony showed that it would cost as much to rebuild as to construct a building anew. *Held,* that a "total loss" had occurred under section 5897, Revised Statutes 1889.

2. ———: INSTRUCTIONS. The following instruction was given: "By a total loss is meant that the building has lost its identity and specific character as a building and become so far disintegrated that it can not be properly designated as a building, although some parts of it may remain standing." *Held,* that this was a proper instruction, *and* that the court committed no error in refusing to instruct that if the cellar walls remained and the lower floors were in such condition that they could be safely used in rebuilding, the building was not wholly destroyed.

3. **Loss by Fire:** AGREEMENT TO ARBITRATE. An agreement to arbitrate in, case of a total loss is repugnant to section 5897, Revised Statutes 1889, and is void.

4. **Fire Insurance:** COMPANY'S PROPOSITION TO REBUILD. An insurance company's proposition to "repair the building and make good the damage" for a loss caused by fire, by using the old walls, which had been impaired and whose use had been forbidden by the city authorities, will not relieve the company from paying for a "total loss."

*Appeal from Jackson Circuit Court.*

AFFIRMED.

*Fyke, Yates & Fyke* for appellant.

(1) The evidence is uncontradicted that defendant demanded of plaintiff that he furnish to defendant in accordance with the plain terms of the contract, verified plans and specifications of the property damaged, and that plaintiff refused so to do. This requirement of the contract is reasonable, valid and binding. *Arnold v. Ins. Co.*, 55 Mo. App. 149; *Fawcett v. Ins. Co.*, 27 Up. Can. Q. B. 225. (2) The evidence clearly shows without contradiction that the property insured was not a total loss; such being the case, it was at plaintiff's option under section 5899, Revised Statutes 1889, to have the property repaired to the extent of such damage or to have defendant pay him a sum of money equal to the damage done to the property. (3) The property not having been totally lost, and a difference having arisen between plaintiff and defendant as to the amount of damage, the defendant had the right under the plain terms of the contract to have the amount of damage fixed by appraisers. This it requested and the plaintiff refused. *Ins. Co. v. Clancy*, 71 Tex. 5; *Old Sauceleto Land Co. v. Ins. Co.*, 66 Cal. 253; *Gauche v. Ins. Co.*, 10 Fed. Rep. 347; *Hamilton v. Ins. Co.*, 136

U. S. 242. (4) Plaintiff's first instruction is erroneous because misleading and not a proper definition of the term "total loss." *Ins. Co. v. McIntyre*, 37 S. W. Rep. 1068; *Ampleman v. Ins. Co.*, 35 Mo. App. 308; *Ampleman v. Ins. Co.*, *Id.* 317. The instruction ignores the undisputed fact that the foundation, lower joists and floor were intact—not damaged by the fire, and could have been safely and properly used in restoring the property. The property insured was "his two story and foundation brick, gravel roof building, etc." The foundation was a part of the property insured and formed an integral part of it, necessary to its construction. *Truesdell et al. v. Gay et al.*, 13 Gray, 313; 1 Bouvier, Law Dictionary, p. 195.

*Wallace & Wallace* for respondent.

(1) The issue on the question of total loss was one for the jury, and that issue was determined in favor of plaintiff. The instructions upon which this issue was submitted to the jury were in accordance with the law as declared in all the cases. *Ins. Co. v. Eddy*, 36 Neb. 461; *Ins. Co. v. Bachler*, 44 Neb. 549; *Ins. Co. v. Garlington*, 66 Tex. 103; *Havens v. Ins. Co.*, 123 Mo. 403; *Barnard v. Ins. Co.*, 38 Mo. App. 106; *Huck v. Ins. Co.*, 127 Mass. 306; *Brady v. Ins. Co.*, 11 Mich. 445; *Nave v. Ins. Co.*, 37 Mo. 430. (2) The defendant was entitled, under the valued policy law, to require the plans and specifications only in case of a partial loss. In case of a total loss there is but one measure of damages, and that is the amount specified in the policy. R. S. 1889, sec. 5897; R. S. 1879, sec. 6009; *Montgomery v. Ins. Co.*, 47 La. Ann. 1563; *Ins. Co. v. Levy*, 33 S. W. Rep. 992; *Roe v. Ins. Co.*, 149 Pa. St. 94; *Ins. Co. v. Schollenberger*, 44 Pa. St. 259; *Ins. Co. v. Dougherty*, 102 Pa. St. 568; 2 May on Insurance [3 Ed.], sec. 465.

GANTT, P. J.—This is an action upon a policy of insurance issued by the defendant to the plaintiff on the fifteenth day of May, 1894, insuring plaintiff for one year against loss or damage by fire, to an amount not exceeding $3,000, to his two story and foundation brick, gravel roof building, with its additions, porches, steam, gas, and water pipes, plumbers' work and fixtures, steam heating apparatus and connections and piping, stone and prismatic sidewalks adjoining, plate glass, skylights, and all permanent improvements therein.

The policy contained this provision: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. Said ascertainment shall be made by the insured and this company, or if they differ, then by appraisers as hereinafter provided. It shall be optional, however, with this company . . . to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice . . . of its intention so to do.

"If fire occurs the insured shall furnish, if required, verified plans and specifications of any building destroyed or damaged.

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one and the

VOL. 140 mo—36

two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, and failing to agree, shall submit their differences to the umpire; and the award, in writing, of any two shall determine the amount of such loss. The loss shall not become payable until after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company including an award by appraisers when appraisement has been required.

"No suit or action on this policy shall be sustainable until after full compliance by the insured with all the foregoing requirements."

On June 3, 1894, a fire occurred by which plaintiff claimed the building was wholly destroyed in contemplation of the statute of this State, and defendant claimed that there was only a partial loss and demanded an arbitration.

The great burden of the testimony was to the effect that the front which consisted of iron pillars and brick superstructure was rendered useless in the condition in which it was left. The pillars were warped and the wall above them sprung out of plumb. The side walls of the lower story were so badly burned, the architects and carpenters testified, that the building could not be repaired; that the old walls would have to be taken down and the building rebuilt from the foundation up. It appeared, however, that a portion of one of the walls in the second story was not ruined by the fire and the effort of defendant was to show that this wall could be shoved up and the burnt portion in the first story taken out and rebuilt, but the architects and builders testified this would be much more costly than taking down the whole of the walls and building them anew, and even if done would not be as good as

it was before the fire. The joists were burnt and the roof and window sills destroyed.

The main contention is based upon the evidence that so far as the witnesses could see the foundation was not hurt much, if any. Two builders testified for defendant as to their estimates for rebuilding the house. One, Mr. Kelley, testified it could be repaired and replaced for $1,738.45; the other, Mr. Hucke, estimated it at $1,688.50, but neither testified it could be done without taking down all the old walls. Plaintiff offered testimony of builders, also, who estimated the loss, one at $3,419.50, the other at $3,752.

The other defense set up in the defendant's answer —the failure of the plaintiff to furnish the defendant with plans and specifications of the building—grows out of the correspondence between the parties. The company wrote Mr. O'Keefe, under date of June 12, demanding an adjustment of the damages by appraisers. Mr. O'Keefe answered this under date of June 14, informing the company that there had been a total destruction of the building as such, and demanding the face of the policy. On July 27, Mr. O'Keefe furnished the company with proofs of loss which were duly received and not objected to. On August 13, the company wrote Mr. O'Keefe acknowledging receipt of the proofs, giving notice that they were willing to repair the building or adjust the damages by appraisers. And on August 20, the company again wrote Mr. O'Keefe, as follows:

"John C. O'Keefe, Esq.

"Dear Sir: We hereby give you notice that we will repair the building, No. 1521 West Ninth street, Kansas City, Mo., insured under our policy 13923, Kansas City, Mo., agency, and in this way make good the damage which occurred on the 3rd day of June, 1894. You are hereby requested to furnish us with

verified plans and specifications of this building for the purpose aforesaid.''

This letter was replied to by the counsel for Mr. O'Keefe, informing the company *that if they would rebuild from the ground up, they could do so, but that the proposition to repair was impracticable, as no part of the old walls could be used and their use had been forbidden by the city authorities.*

I.    The merits of this appeal hinge upon whether this was ''a total loss'' by fire within the meaning of section 5897, Revised Statutes 1889, or ''a partial loss'' only, and therefore falling within the provisions of section 5899, Revised Statutes 1889.

To ascertain the fact, the court directed the jury as follows:    ''By a total loss is meant that the building has lost its identity and specific character as a building and become so far disintegrated that it can not be properly designated as a building, although some part of it may remain standing.''    If this is a correct instruction on the law of the case the finding of the jury must conclude the defendant.

In *Havens v. Ins. Co.*, 123 Mo. 403, the court *in banc* defined ''a total loss'' within the meaning of a similar section, when applied to a building, to mean ''totally or wholly destroyed as a building, although there is not an absolute extinction of all its parts.    It matters not that some debris remains which may be useful or valuable for some purposes.''

Over thirty years ago this court in *Nave v. Ins. Co.*, 37 Mo. 430, held that ''a policy of insurance upon a building is an insurance upon *the building as such*, and not upon the material of which it was composed.''

In *Lindner v. Ins. Co.*, 67 N. W. Rep. 1125, it was ruled by the Supreme Court of Wisconsin that ''where the identity of a building as such has been destroyed by fire, it is a *total loss* though some of its materials

O'Keefe v. Ins. Co.

may not have been entirely destroyed." In that case it appeared from the evidence of the adjuster that *the foundation and cellar of the house were entire and a portion of the sills stood upon the stonework* and it was argued that because the foundation was intact and had not been broken into a shapeless mass, that it was not "*a* total loss." But the court said this evidence would not prevent the case from being regarded as one of "total loss." It would not be expected that the foundation and cellar would be utterly destroyed." The court quoted with approval the language used in *Seyk v. Ins. Co.*, 74 Wis. 72; 41 N. W. Rep. 443, that "it can not be doubted that the identity and specific character of the insured buildings were destroyed by the fire although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings, within the meaning of the statute." So clear indeed did it seem to the court that it held that the circuit court might have properly given a peremptory instruction that it was a total loss. To the same effect are the following decisions: *Oshkosh Packing Co. v. Ins. Co.*, 31 Fed. Rep. 200; *German Ins. Co. v. Eddy*, 36 Neb. 461; *Ins. Co. v. Bachler*, 44 Neb. 549; *H. & B. Ins. Co. v. Garlington*, 66 Tex. 103; *Huck v. Ins. Co.*, 127 Mass. 306; *Williams v. Ins. Co.*, 54 Cal. 450.

In *Corbett v. Spring Garden Ins. Co.*, 85 Hun. (Sup. Ct. N. Y.) 250, the court said: "There was sufficient to go to the jury upon the question whether the building had lost its identity and specific character as a building. If it had, then there was a total destruction within the meaning and intent of the parties and the policy." See, also, *Royal Ins. Co. v. McIntyre*, 34 S. W. Rep. 669.

We hold the instruction was proper and that the court committed no error in refusing to instruct for defendant that if the cellar walls remained and the

lower floors were in such condition they could be safely used in rebuilding, the building was not wholly destroyed. The escape of the stones in the foundation walls from complete extinction, if such a thing be possible, did not prevent the destruction of the building as such being total.

II. It follows as a necessary corollary that as the jury found there was a total loss and the right to an arbitration was only stipulated for in case of a partial loss, there was nothing to arbitrate. An agreement to arbitrate in case of a total loss is repugnant to our statute and void. *Daggs v. Ins. Co.,* 136 Mo. 382; *Havens v. Ins. Co.,* 123 Mo. 403. Clearly an appraisement of property wholly destroyed would be an anomaly.

As to the remaining points, they seem to be without merit. The proofs were duly made out and no objections were made to their sufficiency. The whole case depended upon the claim of plaintiff that the loss was total. If he was right there was nothing to appraise, nothing to arbitrate. Under proper instructions the jury sustained his claim and their verdict concludes the fact.

The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.