HUGH L. ROGERS, Respondent, v. CONNECTICUT FIRE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, June 12, 1911.

1. FIRE INSURANCE: Additional Insurance: Estoppel. This is a suit on a fire insurance policy on real property issued by defendant. The evidence showed that the defendant's agent admitted that the day after the fire he knew just what additional insurance was on the property, and that he then delivered the policy for which plaintiff paid the premium. Plaintiff's evidence tended to show that the fact that there was already $8200 additional insurance was stated to the agent before the policy was issued, and that defendant knew the fact. *Held*, that, even presuming that by mistake, defendant omitted to endorse all of the other insurance on the policy, nevertheless it is estopped from setting up the defense that the policy is void from over-insurance, as a contrary inference would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument.

2. ———: Total or Partial Loss: Three-fourths Clause The insurance (on real property) had been in force only two days when the loss occurred, and the evidence showed no depreciation in the value of the property. *Held*, that, under the provisions of section 7020, R. S. 1909, the real property just before the fire was worth an amount of which the total insurance was three-fourths. Consequently, if the loss was total, plaintiff was

entitled to recover the full face of the policy. If the loss was partial, the provisions of section 7022, R. S. 1909, determine defendant's obligation.

3. ———: Total Loss: Instructions: Defined. In a suit ·on a fire insurance policy on real property, an instruction which defined the term "total loss" as a loss which "does not mean an entire destruction of the property insured, but such a destruction as would render the property insured of no value for the purpose for which it was used or intended to be used at the time the policy was issued, and the fire occurred," properly defines the. term "total loss," as the subject of insurance was not an engine and dynamo detached, and treated as personal property, but was those articles attached, and converted into component elements of an electric light plant, and the fact that the property might be sold as junk, or even repaired in a way to make it useful for other purposes, and therefore, of some value, would not alter its status as property totally destroyed.

4. ———: Vexatious Refusal: Justification. In a suit on a fire insurance policy on real property issued by defendant, where section 7068, R. S. 1909, required that the penalty allowing attorney's fees in cases of "vexatious refusal" be founded on evidence, it is within the province of the court to say whether or not the facts and circumstances adduced in a given case will justify a reasonable inference of vexatious refusal. Hence, where plaintiff a few days before the fire procured insurance in excess of the real value of his property, and where defendant's evidence convincingly tends to show that the property—insured for $9200—was not wholly destroyed, and· could be restored to its original condition at an outlay of $2500, defendant was amply justified in refusing to pay the full indemnity of the policy.

- Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED CONDITIONALLY.

*R. H. Musser* and *F. B. Ellis* for appellant.

(1) Plaintiff's instruction numbered 1 is erroneous in that it fails to authorize the jury to take into consideration, in making up their verdict, the defense to said policy; namely, "that said property was not a

total loss, only partial,'' and said instruction author-
izes a verdict for plaintiff if they find that plaintiff
notified defendant of said loss, and defendant denied
liability under said policy, thus directing and telling
the jury that if such was done, defendant's full lia-
bility under said policy was settled and fixed, under
said circumstances, and further recites if defendant
failed to furnish a blank proof of loss, etc., this aided
said liability.    R. S 1909, sec. 7022; Stevens v. Ins.
Co., 120 Mo. App. 88; Branigan v. Ins. Co., 102 Mo.
App. 70; Havens v. Ins. Co., 123 Mo. 403.    (2)   Plain-
tiff's instruction No. 2 adds to the error in instruc-
tion No. 1, giving additional reasons for the considera-
tion of no other defense by the jury than the addi-
tional insurance not being indorsed upon the policy,
and the record does not support it.    Atlas Reduction
Co. v. Ins. Co., 71 C. C. A. 21, 138 Fed. 497; Gray v.
Ins. Co., 155 N. Y. 180; Hutchinson v. Ins. Co., 21 Mo.
97; Deitz v. Ins. Co., 38 Mo. 85; Rothschild v. Ins.
Co., 62 Mo. 362; Carpenter v. Ins. Co., 16 Pet. 494;
Turner v. Ins. Co., 16 Fed. 454.    (3)   If this property
had any value outside of the purpose for which it was
used, there cannot be a total loss within the meaning
of the law, and the instruction does not take into ac-
count any ability there might be to repair or restore
the property, of which there was a great amount of
creditable testimony in the case.    Brown v. Weldon,
99 Mo. 465; Havens v. Ins. Co., 123 Mo. 123.    (4)
The mere fact that defendant litigated this claim of
total loss of plaintiff does not prove it vexatious, nor
justify its submission to a jury.    There was a just and
reasonable defense supported by ample evidence.   Utz .
v. Ins. Co., 139 Mo. App. 156; Blackwell v. Ins. Co.,
80 Mo. App. 75; Renfro v. Ins. Co., 129 S. W. 448;
White v. Reitz, 129 Mo. App. 313; McGinnis v. Rail-
road, 200 Mo. 363.

*John A. Cross* for respondent.

(1) It cannot be successfully denied that the evidence in this case establishes a waiver of the condition of the policy pleaded by appellant in its answer, the weight and sufficiency of which is always a question of fact for the jury to determine. Pelkington v. Ins. Co., 55 Mo. 172; Gale v. Ins. Co., 33 Mo. App. 664; Hoffman v. Ins. Co., 56 Mo. App. 301; Porter v. Ins. Co., 62 Mo. App. 526; 2 Wood Fire Ins., p. 943. Prior to the issue and delivery of the policy to respondent, appellant's agent, Stuckey, had full knowledge of all the other additional insurance on the property covered by the policy in suit. This agent had full authority under our decisions to waive the written conditions of the policy as to additional insurance, being in all things the *alter ego* of the company. The above facts constitute a waiver of the terms of the policy, and the appellant is estopped from pleading a forfeiture of the same as a defense to this suit. Nichell v. Ins. Co., 44 Mo. 420; Laundry Co. v. Ins. Co., 151 Mo. 90; Thompson v. Ins. Co., 169 Mo. 12; Polk v. Ins. Co., 114 Mo. App. 514. (2) The property insured by the policy in suit was "wholly" destroyed within the meaning of section 7020, Revised Statutes of 1909. Nave v. Ins. Co., 37 Mo. 430; Haven v. Ins. Co., 123 Mo. 403; Banard v. Ins. Co., 38 Mo. App. 106; Jacobs v. Ins. Co., 61 Mo. App. 572; Marshall v. Ins. Co., 80 Mo. App. 18; O'Keefe v. Ins. Co., 140 Mo. 558. (3) The question of vexatious delay is a question of fact to be determined by the jury from all the facts and circumstances in the case. Brown, Admr., v. Ins. Co., 45 Mo. 221; Keller v. Ins. Co., 198 Mo. 440; Kellogg v. Ins. Co., 133 Mo. App. 402; Uts v. Ins. Co., 139 Mo. App. 156. It was not necessary that respondent should offer evidence of vexatiousness. Vexation can be inferred by the trier of the facts from the facts and circumstances of the case. Brown, Admr., v. Ins. Co., 45 Mo. 221.

Rogers v. Fire Ins. Co.

JOHNSON, J.—This suit is on a fire insurance policy of $1000, issued by defendant to plaintiff May 26, 1906. Plaintiff was the owner and operator of an electric light plant in the city of Lathrop and the policy in suit covered the gas engine and dynamo which were in his power house and so attached thereto that they must be considered a part of the realty and not as personal property. Two days after the policy was issued, the power house was destroyed by fire and the machinery, of which the engine and dynamo were the principal parts, was so badly damaged that plaintiff claims it became valueless for the purposes of its use as an integral part of the power plant.

The evidence of plaintiff is to the effect that the machinery had no value after the fire except what might be realized from it if sold as junk, while evidence introduced by defendant tends to show that by an outlay of $2500, in the replacement of destroyed or worthless parts and in the repairing of damaged parts the engine and dynamo could be restored to usefulness.

The policy contained a provision that if there was other insurance on the property the policy would be void unless such other insurance was indorsed on the policy and the only additional insurance indorsed was a policy of $4000 previously issued by the Home Insurance Company of New York. In fact, at that time, there was other insurance on the engine and dynamo amounting to $4200 and the policy in suit brought the total outstanding insurance on that property to $9200. Defendant claims that it had no knowledge of any other insurance than that indorsed on the policy until after the fire. Plaintiff's evidence tends to show that the exact facts respecting the other insurance were stated to the agent who represented defendant in the transaction before the policy was issued and that defendant knew that with the policy in suit the property was insured for $9200.

It appears that defendant's agent was in the banking business at Lathrop and, fearing defendant might decide to cancel the policy, he did not deliver it to plaintiff but kept it in the bank until about two weeks after the fire when he delivered it. He collected the premium of thirty-one dollars from plaintiff and, deducting his commission, remitted the remainder. Defendant received this premium, has retained it to this day and at no time has even offered to return it. The agent admits that the day after the fire he knew just what insurance was on the property and that he delivered the policy. We quote from his cross-examination:

"Q. The day after the fire Pross told you the whole amount of insurance he had? A. Yes.

"Q. And you had this policy in your company? A. Yes, sir.

"Q. And you charged up on the bank books thirty-one dollars against Mr. Rogers, the premium on that policy, after the fire? A. Yes.

"Q. You took that thirty-one dollars to your credit? A. Yes.

"Q. And returned eighty-five per cent of it to the company and kept out fifteen per cent? A. Yes, I kept out my commission.

"Q. Did you return eighty-five per cent to the company? A. Yes.

"Q. Was that ever returned to Mr. Rogers? A. No.

"Q. You never returned him your fifteen per cent? A. No.

"Q. Sometime in June you delivered this policy to Mr. Rogers? A. Yes.

"Q. Do you know this man Fleming? A. Yes.

"Q. He is the state agent? A. I understand him to be.

"Q. Didn't Fleming tell you before you deliv-

ered that policy that they did not deny liability on that policy?''

(Objections.)

"Q. Didn't he tell you, Sam, in talking about it 'We don't deny liability?' A. He told me that, but I don't remember whether it was at that time or later.

"Q. But it was before you delivered the policy? A. No, I think not. I am not positive on that point, though.

"Q. What time did you deliver the policy? A. After he and Mr. Welsh came to Lathrop. I don't think I told him anything about holding the policy.

"Q. You held it a sufficient length of time and when they didn't tell you not to deliver it you delivered it? A. My purpose in holding the policy was to give the office at Chicago time to reject it, not to see Mr. Fleming. I don't know that Mr. Fleming ever knew I held the policy, I don't remember about that. But I held it to hear from the Chicago office before I delivered it to Mr. Rogers.

"Q. When did you charge this thirty-one dollars premium to Mr. Rogers? A. I think about the middle of June.''

Evidence was heard on the issue of the actual value of the machinery from which it is disclosed that the property was not worth to exceed $8000. The cause was submitted to a jury and a verdict was returned for plaintiff in the sum of $1000 on the policy and $100 for attorney's fees. Defendant appealed.

A number of questions of law raised by the pleadings, evidence and instructions are discussed in the briefs and we shall dispose of the controlling questions in their logical order.

At this term we reversed a judgment recovered by plaintiff against the Home Insurance Company of New York on the policy to which we referred in our statement of facts. [Rogers v. Ins. Co., 136 S. W. 743.]

Speaking through ELLISON, J., we held in that case that plaintiff had violated the provision of the policy relating to additional insurance and that the evidence, instead of showing a waiver of that provision, affirmatively disproved the contention of plaintiff that there was a waiver.

The policy involved in that suit was the first insurance procured by plaintiff on the property and the only fact on which plaintiff predicated his claim of waiver was that after that policy was issued plaintiff caused the agent of the company to be informed of his purpose to procure additional insurance at some indefinite future time. We applied the rule which finds abundant support in the authorities that the expression by the assured of an unexecuted intention to ignore a contract stipulation at some indefinite time imposes no obligation on the insurer to dissent (Polk v. Ins. Co., 114 Mo. App. 514), and, consequently, that such fact, of itself, will not suffice as the foundation of a claim that the insurer waived the stipulation. But in express terms Judge ELLISON distinguished the facts of that case from a state of facts such as is disclosed by the present record. He said (p. 744) :

"Thus if it had been shown, as pleaded by plaintiff, that there was other insurance at the time this policy was taken and defendant's agent knew of it, and yet collected the premium and delivered the policy without indorsing it on the policy, it would be presumed he waived that requirement."

The rule is well stated as follows in Gray v. Ins. Co., 155 N. Y. l. c. 184:

"Where an insurance company issues a policy, with full knowledge of facts which would render it void in its inception if its provisions were insisted upon, it will be presumed that it by mistake omitted to express the fact in the policy, waived the provision, or held itself estopped from setting it up, as a contrary

inference would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument.''

The conceded fact that defendant, with full knowledge of the true facts relating to other insurance, collected and retained the premium of plaintiff and then delivered the policy, conclusively establishes the claim of waiver. We so decided in the recent case of Rhodus v. Ins. Co. (not yet reported) where we said:

''This is a case where the proposition for insurance was made by a live man, in good health, to an agent authorized to receive it and to transmit it to the defendant company. It was then for the approval or rejection of the company. As matters stood contractually, the company could have rejected it, and more than that, it could have relied upon the provision which we have quoted from the application, that there was to be no contract until a policy was issued and delivered. But the company did not choose to stand on these conditions. It waived them by accepting the premium which was *paid for insurance,* with full knowledge of what the payment was for and of the assured's death. By that act it adopted the agent's act as consummating a contract of insurance without a formal approval of the application by the medical director, or the issuance of a policy.''

Paraphrasing a portion of the above quotation from Gray v. Ins. Co., we shall presume that, by mistake, defendant omitted to indorse all of the other insurance on the policy and shall hold it estopped from setting up the the defense that the policy is void on account of over insurance.

The policy contains a ''three-fourths'' clause which provides ''that in the event of loss . . . this company shall not be liable for an amount greater than three-fourths of the actual cash value of each item of property insured by this policy (not exceeding the amount insured on each such item),'' etc. The items of property stated in the policy were not sepa-

rately insured but were insured together for the lump sum of $1000. In issuing the policy which raised the whole insurance to $9200, defendant, under the provisions of section 7030, Revised Statutes 1909, as construed by the courts of this state (Surface v. Ins. Co., decided at this term, and cases cited), estopped itself from afterward asserting that the total insurance exceeded seventy-five per cent of the value of the property at the time the policy was issued and we must ignore the evidence showing a less value and assume that the property was of the value accorded it by the act of defendant in issuing the policy. On the hypothesis of plaintiff that the property was totally destroyed in the fire the rule of damages prescribed in section 7020, Revised Statutes 1909, is applicable since we are dealing with real, not personal, property. That rule is that "in case of total loss of the property insured, the measure of damages shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant." The insurance had been in force only two days when the loss occurred and, since the evidence shows no depreciation in the value of the property, we must hold that just before the fire it was worth an amount of which the total insurance was three-fourths. Consequently, if the loss was total, plaintiff was entitled to recover the full face of the policy. On the other hand, if the loss was partial, the obligation of defendant is determined by the provisions of section 7022, which is as follows:

"Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such dam-

age, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured."

We find the court, in the instructions to the jury, properly submitted the issue of whether the loss was total or partial and the only serious objection defendant urges against the rulings of the court on the instructions is in the definition of the term "total loss" appearing in the following instruction given at the request of plaintiff:

"The court instructs the jury, if they find for the plaintiff, under the instructions given in this case, and if they further believe from the evidence that the plaintiff has suffered a total loss of the property insured, by reason of said fire, you will then find in favor of the plaintiff, for the full amount named in the policy, to-wit: one thousand dollars, and in this connection you are instructed, that the term "Total Loss" does not mean an entire destruction of the property insured, but such a destruction as would render the property insured of no value for the purpose for which it was used or intended to be used at the time the policy was issued and the fire occurred."

The obvious meaning of that definition is that if the machinery was so damaged that it had no value as a part of the power plant of plaintiff, that is to say, if it could not by repairs and replacements be restored to its intended use as an integral part of the factory, then the fact that it might be sold as junk or even repaired in a way to make it useful for other purposes and, therefore, of some value, would not alter its status as property totally destroyed.

It must be borne in mind that the subject of insurance was not an engine and dynamo detached and treated as personal property but was those articles attached to the soil and converted into component elements of a manufactory. The issue is not whether in their damaged state they have some value for other

purposes, but whether they have any value left in them for the purposes of the factory should it be restored and operated.

A similar case was considered by the Supreme Court in Havens v. Fire Ins. Co., 123 Mo. 403. There the policies separately insured a mill and its machinery valued at $8400. Before the fire the assured had removed a small part of the machinery valued at $380 for repairs. All of the property except that being repaired was destroyed in the fire. Point was made that the machinery was not totally destroyed but the court rejected this contention, saying, in part:

"We do not think that the question of partial loss can arise under these circumstances. All the property covered by the policy at the time of the fire was wholly destroyed. The property insured was a mill and the fire destroyed its identity and specific character as such. The words 'wholly destroyed' have been placed in statutes like this in many states of the Union, and, so far as we have been able to find, the construction appears to be uniform that, as applied to buildings, they mean totally destroyed as a building, although there is not an absolute extinction of all its parts.

"It matters not that some debris remains which may be useful or valuable for some purposes. Such was the construction given in the subjoined cases and such is our construction. [Williams v. Ins. Co., 54 Cal. 442; Seyk v. Ins. Co., 41 N. W. Rep. 443; Barnard v. Ins. Co., 38 Mo. App. 106; Oshkosh, etc., Co. v. Ins. Co., 31 Fed. Rep. 200; Ins. Co. v. Sherlock, 25 Ohio St. 59; Wallerstein v. Ins. Co., 44 N. Y. 204; Ins. Co. v. Fogarty, 19 Wall. 640."]

In O'Keefe v. Ins. Co., 140 Mo. l. c. 564, the Supreme Court approved the following instruction:

"By a total loss is meant that the building has lost its identity and specific character as a building and become so far disintegrated that it cannot be properly designated as a building, although some part

of it may remain standing." And gave sanction to the rule thus expressed by the Supreme Court of Wisconsin in Seyk v. Ins. Co., 74 Wis. 72, 41 N. W. 443, that "it cannot be doubted that the identity and specific character of the insured buildings were destroyed by the fire although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings within the meaning of the statute."

Certainly it would be absurd to say because the machinery of a factory which had passed through a fire had some value as scrap iron it was not wholly destroyed within the meaning of the statute, and we think it would be equally as untenable to say that injured machinery which cannot be restored to its intended use is only partially destroyed if it possesses value for any use. The instruction under consideration properly defined the term "total loss."

The last question we shall discuss is that relating to the imposition in the verdict and judgment of a penalty on the ground that defendant's refusal to pay the face of the policy was vexatious. The statute, section 7068, Revised Statutes 1909, provides that "if it appear *from the evidence* that such company has vexatiously refused to pay such loss the court or jury may allow the plaintiff damages," etc. Plaintiff was not required to introduce affirmative proof that the refusal was vexatious. [Brown v. Assurance Co., 45 Mo. 221.] If, from all the facts and circumstances in evidence a reasonable inference might be drawn that the refusal was vexatious, i. e., without reasonable cause (Blackwell v. Ins. Co., 80 Mo. App. l. c. 78), it was within the exclusive province of the jury to impose the penalty. [Keller v. Ins. Co., 198 Mo. 440; Kellogg v. Ins. Co., 133 Mo. App. 391; Utz v. Ins. Co., 139 Mo. App. 153.] But it is well said in Blackwell v. Ins. Co., supra: "The insurer, so long as he acts in good faith and with reasonable ground to believe that

the insured has not a legal demand, may contest the claim in court as any other litigant, without fear of a penalty if it happens that his defense is not well founded.'' And in that case we would not permit the penalty imposed by the jury to stand.

The statute itself requires that the penalty must be founded on evidence and it is within the province of the court to say whether or not the facts and circumstances adduced in the given case will justify a reasonable inference of a vexatious refusal. We hold there is no evidence in this case to support an inference that the refusal was without reasonable cause. A fair minded person, after a careful reading of the record, cannot escape the conviction that plaintiff, a few days before the fire, industriously and successfully set about, in violation of the statute, as well as of the stipulations of his contracts, to procure insurance in excess of the real value of his property and but for the fact that defendant stupidly fell into the position of being estopped from interposing the defense of over-insurance and thereby gave vitality to a voidable policy, plaintiff would have had no standing in court. This, of itself, might not afford sufficient ground for our interference with the verdict but when we consider further that the evidence of defendant strongly and, we think, convincingly, tends to show that the property was not wholly destroyed and could be restored to its original condition at an outlay of $2500, we say that defendant was amply justified in refusing to pay the full indemnity of the policy and that no reasonable mind can infer that such refusal was without reasonable cause.

On condition that a remittitur of $100 be entered by plaintiff within ten days from the filing of this opinion, the judgment will be affirmed. Otherwise it will be reversed and the cause remanded.

All concur.