I. M. Lux, Appellant, v. Milwaukee Mechanics Insurance Company, Respondent.*

Kansas City Court of Appeals.  May 9, 1927.

*Corpus Juris-Cyc References: Contracts, 13CJ, p. 560, n. 37; Evidence, 22CJ, p. 150, n. 72; Fire Insurance, 26CJ, p. 81, n. 10; p. 349, n. 63; p. 351, n. 75; Municipal Corporations, 43CJ, p. 236, n. 11; p. 261, n. 71; p. 296, n. 39; Trial, 38Cyc, p. 1340, n. 2.

*Frank M. Lowe, I. M. Lux* and *John D. Wendorff* for appellant.

*Fyke, Snider & Hume* for respondent.

ARNOLD, J.—This is an action seeking to recover on a policy of fire insurance.

Defendant is a corporation organized and existing under the laws of the State of Wisconsin, engaged in writing policies of fire insurance, and duly authorized to transact business in the State of Missouri. Plaintiff is a resident of Kansas City, Mo., and in January, 1918, was the owner of a two-story frame residence located at 3604 Thompson avenue in said city.

On January 9, 1918, in consideration of the payment of $28 premium, defendant issued its policy of fire insurance on plaintiff's said property, insuring same for a period of three years against loss or damage by fire in the sum of $3500, for total loss. The policy issued was the standard form containing usual provisions. The property insured is described in the policy as a two-story frame shingle roof building. On January 30, 1918, a fire occurred in said building. According to plaintiff's evidence the building was so badly damaged by the fire that the superintendent of buildings in the city of Kansas City, Mo., on February 15, 1918, ordered plaintiff to tear the building down at once, which was done. There appears to have been some ineffectual effort made to adjust the loss. The order for the destruction of the building was in writing, as follows:

"Superintendent of Buildings' Office.
"Kansas City, Mo., Febr. 15, 1918.
"To I. M. Lux,
"3604 Thompson,

"Upon a thorough examination and inspection of the frame bldg., located at 3604 Thompson street, in Kansas City, Missouri, by Chas. Lyon, a regular qualified inspector of this department, the following conditions are found to exist respecting said building, to-wit: Impaired by fire and dangerous to adjoining neighborhood. And you, as the owner of such building, are hereby notified to cause said building to be torn down to satisfaction of Building Department at once. And unless you commence the work by 12 o'clock noon of the at once day following the reception of this notice and employ sufficient labor to do the same as expeditiously as it can be done, then such proceedings will be taken in hand against you as are authorized by Ordinance No. 38919 of the City of Kansas City Missouri, approved March 9, 1918.

"(Signed)          F. B. HAMILTON,
"(By) J. H."

The petition charges "the property was destroyed by fire, that it was burned in such a condition that the outside frame still re-

mained and that under proper conditions, could have been repaired.''
That on or about January 30, 1918, plaintiff notified the defendant
of the said fire and furnished proof of loss, and made demand for
the amount due; that plaintiff had estimates of the damage made and
submitted same to defendant; that defendant refused payment of the
loss, and also refused to proceed to repair the building; that on or
about February 15, 1918, plaintiff was served with the notice above
referred to from the superintendent of buildings of Kansas City, Mo.;
that plaintiff thereupon notified defendant of the order to tear the
building down.  The petition sets out section 8 of Ordinance No.
38919, which is the building code of the city, as follows:

''The Superintendent of Buildings shall have full discretionary
powers of declaring to be a public nuisance, any building, any struc-
ture or part thereof that is unsafe as to fire or for the purpose used
or has become unsafe from fire, decay or other causes and shall insti-
tute such proceedings and take such steps as may be necessary for
the immediate abatement of any and all such nuisances.''

Also section 255, or a part thereof, as follows:

''Any owner, occupant or agent so notified as above provided, who
shall fail, neglect or refuse to comply with such notice within the time
provided by such notice shall be deemed guilty of misdemeanor, and
every day's continuance of such nuisance,'shall be deemed and taken
to be a separate and distinct offense.''

The petition recites that, pursuant to said notice, that part of said
building remaining unburned was torn down by plaintiff; that plain-
tiff suffered the total loss of said property which was of the reasonable
value of $4500, and that the said fire was the direct cause of the loss
and damage.  Judgment was sought in the sum of $3500, the face
value of the property, with interest at six per cent from January 30,
1918, and $350 attorney fees.

The answer is a general denial but admits defendant's corporate
existence and the issuance of the policy, as alleged in the petition.
As affirmative defense the answer pleads the following clause in the
policy:

''This company shall not be liable beyond the actual cash value
of the property at the time any loss or damage occurs . . . and
shall in no event exceed what it would then cost the insured to repair
or replace the same with material of like kind and quality, . . .
and the amount of loss or damage shall be payable sixty days after
due notice, ascertainment, estimate and satisfactory proofs of loss
have been received by this company in accordance with the terms of
this policy.''

The answer specifically denies that the damage to the insured prop-
erly was as great as the petition alleges; states the policy sued on pro-
vides the company shall not be liable beyond the actual cash value of

the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, and shall in no event exceed what it would cost to replace same. And defendant states the said clause, as pleaded, provides the method for such ascertainment, the period in which the amount ascertained shall be paid, and in the event of disagreement between the parties as to the amount of the loss, there shall be chosen disinterested appraisers to estimate the loss. Further, the answer pleads that a disagreement arose between the parties as to the amount of the loss, and that the amount never has been determined by appraisers, as provided in the policy.

The answer specifically denies that plaintiff received notice from the superintendent of buildings to tear down said building; denies that a notice was served upon plaintiff under and by virtue of ordinance No. 38919; alleges that section 8 of said ordinance and also section 255 thereof referred to in the petition are illegal, unconstitutional and void, and in direct violation of section 30, article 2 of the Constitution of Missouri, which provides that no person shall be deprived of his life, liberty or property without due process of law; and in violation of section 1, article 14 of the Constitution of the United States, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of its laws. The answer further denies that the policy sued on was in force and effect at the time the said fire is alleged to have occurred and, therefore, no cause of action had accrued to plaintiff at the time this action was brought, and states this suit was prematurely brought.

The reply is a general denial. The cause was tried to a jury resulting in a verdict for plaintiff in the sum of $2350, and judgment therefor was entered accordingly. Plaintiff was not satisfied with the amount of the verdict and after timely motion for a new trial was overruled he brought the case here by appeal.

There was a constitutional question properly and timely presented in the answer of defendant. It was kept alive when defendant offered an instruction declaring the ordinance pleaded by plaintiff was unconstitutional. But the ruling of the court on that instruction was in favor of plaintiff, defendant did not except thereto, and has not appealed. Plaintiff appealed and, of course, has no complaint of that ruling. The constitutional question, therefore, disappears from the case. This was the ruling of the Supreme Court on certification of the case by this court to that tribunal.

The main point for determination on this appeal is whether there was a total loss of the house within the meaning of the policy and

the law. Plaintiff proved that his building was damaged by fire to the extent that it was declared a nuisance by the superintendent of buildings; plaintiff was ordered to remove it and by his compliance with said order, he suffered a total loss and was entitled to damages accordingly. Of course the theory of defendant is to the contrary and it is on this point this legal battle is waged.

The record discloses that the trial court admitted in evidence sections 8 and 255 of ordinance No. 38919 of Kansas City, Mo., approved March 9, 1908, only for the purpose of showing the authority under which the city acted as to the disposition of the remainder of the structure in question, the theory of the court being that the disposition of the remainder of the building, under the order of the superintendent of buildings had nothing to do with the extent of damage to said building. This ruling of the trial court is assigned as error. It is urged that plaintiff tore down said building in conformity with the order and thereby sustained a total loss. As already stated, section 8 of the ordinance known as the Building Code invests the superintendent of buildings with full discretionary power to declare a public nuisance any building or part thereof which has become unsafe from fire, and requires him to take such steps as may be necessary for the immediate abatement of the same. Section 275 of the ordinance provides that such notice, under the ordinance, shall be issued by the superintendent of buildings. Section 255 provides a penalty for failure to comply with such notice.

The testimony shows that the house in question caught fire January 30, 1918; that it was damaged but not completely destroyed; that portions remained standing; that upon inspection the superintendent of buildings found it "impaired by fire and dangerous to adjoining neighborhood" and ordered plaintiff to tear it down, which he proceeded to do, and did. The point for our determination under the facts presented is whether or not the building, in law, was a total loss. Our Supreme Court in O'Keefe v. Insurance Co., 140 Mo. 558, 564, 41 S. W. 922, 923, has defined "total loss" as follows:

"The merits of this appeal hinge upon whether this was 'a total loss' by fire, within the meaning of section 5897, Revised Statutes 1889, or 'a partial loss' only, and therefore falling within the provisions of section 5899, Revised Statutes 1889. To ascertain the fact the court directed the jury as follows:

" 'By a total loss is meant that the building has lost its identity and specific character as a building, and become so far disintegrated that it cannot be properly designated as a building, although some part of it may remain standing.' If this is a correct instruction on the law of the case, the finding of the jury must conclude the defendant. In Havens v. Insurance Co., 123 Mo. 403, 27 S. W. 718, the court

*in banc* defined 'a total loss,' within the meaning of a similar section, when applied to a building, to mean, 'totally or wholly destroyed as a building, although there is not an absolute extinction of all its parts. It matters not that some *debris* remains which may be useful or valuable for some purposes.' Over thirty years ago, this court, in Nave v. Insurance Co., 37 Mo. 430, held that a policy of insurance upon a building was insurance upon the building as such, and not upon the material of which it was composed.''

And this definition is adopted in Stevens v. Norwich Fire Ins. Co., 120 Mo. App. 88, 101, 96 S. W. 684, and in Brown v. Insurance Co., 184 S. W. 122. It was held in Stubbins v. Insurance Co., 229 S. W. 407, 408, an opinion by this court, as follows:

''The evidence shows that the barn was blown down, and that 'it was a wreck.' Defendant offered to prove that the barn material remained on the premises, and had a substantial value, and was substantially sufficient to reconstruct a barn of 'this character,' that the damage to the material did not exceed twenty-five per cent., and that the barn was rebuilt at a nominal cost from the material of the old barn. The court refused this evidence, and this action of the court is complained of as erroneous. We think that the evidence was clearly inadmissible.'' [Citing Rogers v. Fire Ins. Co., 157 Mo. App. 671, 139 S. W. 265.]

From these authorities, we hold the correct rule to be that there is a total loss, in law, when by reason of the fire the building has lost its identity and specific character as such, although some parts of it remained standing and could be used in its repair or reconstruction. In the instant case it appears the testimony is conflicting as to the parts of the house which were destroyed and damaged by the fire. Under the ruling of the trial court whereby the bearing of the notice to tear down was limited to the purpose of showing the authority under which the city acted and had nothing to do with the extent of the damage, the verdict of the jury was for plaintiff in an amount less than a total loss. The testimony shows the building was condemned by the superintendent of buildings and thereby, inferentially, at least, there was a refusal on the part of the city authorities to permit repairs. Their opinion, doubtless, was that public safety required the tearing down of the building. Defendant urges the building could have been repaired so as to make it as good as before the fire, and that the cost of the repairs should be the measure of defendant's liability.

The police power of a municipal corporation to guard against unsafe buildings by ordering their demolition may not be questioned. The exercise of such power in a particular case may be erroneous and the power possibly may be abused, but it exists, subject to judicial

control. However, the courts will not interfere except upon very clear grounds. [Monteleone v. Royal Ins. Co., 18 So. 472; Hamburg v. Garlington, 66 Tex. 103, 18 S. W. 337; Brady v. Ins. Co., 11 Mich. 425, 445.]

The evidence in plaintiff's behalf fully upholds the conclusion of the inspector of buildings that the remains of the building, if left standing, would endanger the public safety. Plaintiff testified as follows:

"The floors were burned up, the walls, the windows, doors, and just part of the roof was left, and part of one room. The rest of it was all burned down.

"Q. How about the partitions, floors and joists supporting them? A. Most of it was all burned down. Some of it was left—kind of a skeleton, like—burned through.

"Q. How about the sides that were left, were they standing erect, plumb or how? A. No, sir, the walls, the western wall was leaning out kind of—the building looked like it was going to keel over.

"Q. Now, what was the— A. (interrupting and continuing): —and the chimney has sagged down quite a few inches. There was a lintel, you know, across the bay window, and that gave way, and the upper part kind of went down.

"Q. How about the floor, where the stove was sitting? A. That was all burned through—the stove went down to the basement."

And Mrs. Frank Hight, testifying for plaintiff, stated:

". . . the whole inside of the house, you understand, there was nothing left at all, not a thing on the inside of the house. The upstairs was getting ready to come down, as you call it.

"Q. Sagging? A. Yes, sagging; and the chimney was sagging. The stove that he had in his sitting room was a hard coal burner, and it was in the basement. It fell through the floor into the basement. There wasn't even a shell in the house; not even the windows.

"Q. Doors? A. No, not the doors. Everything was burned."

The inspector for the city whose report caused the order of demolition to be issued by the superintendent of buildings testified:

"I believe what impressed me most in making it unsafe was the fact that the wood supports were burned away around the flue. It was quite a tall flue, and the flue was undermined somewhat, and around on the second floor—probably eight or ten feet of it—was floor joists, was resting on a wooden lintel, and the wooden lintel was burned out, making it weak and sagging, and that had pushed the west wall out I should say probably six inches, and it was the combination of the flue and wooden lintel that impressed me more than anything else in making it unsafe. . . .

"Q. And you figured, if that flue came down and carried the lintel with it, it might possibly push the wall out and tear the house down?

A. Well, I thought—there was no telling—one might start first, or the other start first. They would probably go down together."

The evidence further shows that defendant's agent instructed plaintiff to board up the windows to keep the wind out, as he feared that a hard wind might blow over the remains of the building.

The ordinance pleaded must be held to be a part of the contract of insurance and the insurer is bound thereby. This is in accordance with the general rule that where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into such contracts with reference to such statutes, and such provisions become part of the contract. Persons are presumed to know the ordinances. There being no question of the authority of the city to enact ordinances, they become an integral part of a contract of insurance within the city limits.

Defendant insists that the house in question is not shown to have been within the defined fire limits of the city. But we hold this point is without merit because the police power of the city, in the absence of a positive showing to the contrary, is co-extensive with the city limits. We do not understand defendant's position in this respect to be to the contrary, the main contention being that the order of the superintendent of buildings had no further significance than that, in his opinion, the building after the fire was a nuisance, and such order did not tend to fix the amount of the damage. But we think the order may fairly and reasonably be construed to mean that the requirement that the building be torn down was equivalent to a declaration that plaintiff had sustained a total loss. Therefore we must conclude the trial court erred in limiting the force and effect of the order, in the light of the evidence that the remains of the building constituted a menace to the public, and that the city authorities were acting within the scope of their duties in ordering its demolition. It is defendant's position in this respect that the action of the superintendent of buildings in ordering the building torn down because it was unsafe from fire, decay or other causes, is not conclusive and that the property owner is entitled to a hearing in court to determine the question of fact as to whether or not the building was a nuisance. Plaintiff was not required to contest the order of demolition if the situation was such as to justify such order by the city authorities. An examination of authorities cited does not support defendant's position. We have already held the ordinance valid and therefore the superintendent of buildings had authority to act as he did in the premises.

We hold the court erred in giving defendant's instruction "E" which withdrew from the consideration of the jury the notice given by the building inspector in determining whether or not the building

was wholly destroyed by fire. [See cases cited above.] Plaintiff's objections to instructions "B" and "C" given for defendant are held to be good, because these instructions are faulty in the same respect as instruction "E" discussed above. [O'Keefe v. Ins. Co., 140 Mo. 558, 564, 41 S. W. 922, 923; Stevens v. Ins. Co., 120 Mo. App. 88, 101, 96 S. W. 684, 688; Brown v. Ins. Co., 184 S. W. 122, 123; Stubbins v. Ins. Co., 229 S. W. 407, 408.]

For the errors above enumerated the judgment is reversed and the cause remanded for a new trial in accordance herewith. *Bland, J.,* concurs; *Trimble, P. J.,* absent.