Josephine D. McCREARY, Plaintiff-Respondent,

v.

EMPLOYERS MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellant.

No. 31501.

St. Louis Court of Appeals.

Missouri.

April 21, 1964.

Adolph K. Schwartz, St. Louis, for defendant-appellant.

Gerwitz & Seegers and Gerald L. Seegers, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff brought this suit to recover for the loss of her building, alleged to have been caused by an explosion, which she contended was covered by a policy of insurance issued by defendant. The jury returned a verdict in favor of plaintiff for $5,000 plus interest at 6%. Following the verdict plaintiff remitted the interest, and from the judgment which followed defendant appealed.

Plaintiff owned a lot in University City on which two buildings were located. In one, situated towards the front of the lot, she conducted a dry cleaning business. The

second, with which we are concerned, was built on the back of the lot. It had been rented by plaintiff to a tenant until several days before the casualty involved, when because of the tenant's failure to pay rent plaintiff had padlocked the doors, but had not actually entered therein. The building was a concrete block structure with a hip roof made of wood, and was known and numbered as 1220–24 North and South Road, rear. It was about 80 feet in length, parallel to the street, and approximately 20 feet in width. There were no windows, and the only doors were two sliding doors on the west wall, facing the street. Heat was furnished by an oil burning ceiling-type furnace, suspended from the rafters by angle irons. The heater was located slightly south of the center of the building, and about two feet from the west wall. The standard fire insurance policy purchased by plaintiff on November 17, 1958, had attached to it an extended coverage endorsement, the pertinent part of which read:

"Provisions Applicable Only to Explosion: Loss by explosion shall include direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom. However, this Company shall not be liable for loss by explosion, rupture or bursting of:

"(a) steam boilers, steam pipes, steam turbines or steam engines; or

"(b) rotating parts of machinery caused by centrifugal force;
if owned by, leased by or actually operated under the control of the Insured.
"The following are not explosions within the intent or meaning of these provisions:

"(a) Concussion unless caused by explosion,

"(b) Electrical arcing,

"(c) Water hammer,

"(d) Rupture or bursting of water pipes.

"Any other explosion clause made a part of this policy is superseded by this endorsement."

Plaintiff's theory of her case was that a malfunction of the oil furnace resulted in an explosion of fuel in the fire box or combustion chamber of the heater, which destroyed or damaged the building. Defendant's theory was that because of the substandard construction of the building an accumulation of snow on the roof caused the roof to sag and fall, and the walls to collapse.

■ Defendant submitted a motion for a directed verdict at the close of plaintiff's evidence, and again at the close of all the evidence, and its initial assignment is that the court erred in overruling the latter because there was no substantial evidence that the collapse of the building was caused by an explosion inside the furnace. As we have repeatedly stated (and as appellants so often ignore) the rule is that in determining that question we view the evidence in the light most favorable to plaintiff, according her the benefit of all favorable inferences that may reasonably be drawn therefrom, and that we disregard all of defendant's evidence except insofar as it may aid the plaintiff. Christie v. Gas Service Co., Mo., 347 S.W.2d 135; Painter v. Knaus Truck Lines, Mo., 375 S.W.2d 19.

The casualty occurred at some undetermined time between 11:00 P.M. on the night of Wednesday, March 9, 1960, and about 7:00 A.M. on Thursday, March 10, 1960. Plaintiff produced no eyewitnesses. The first person known to have arrived on the scene was Robert Schutte, a University City police officer, who received a message on his car radio that a building at the foregoing address had suddenly collapsed.

When he arrived he found that " * * * the walls were blown outward," the roof had fallen in towards the center, and the furnace was on the outside of the building. Its door was off and was some distance away. Other witnesses for the plaintiff confirmed that the furnace was outside of the building and that the door was off and lying some distance away. Plaintiff's witnesses variously described the condition of the furnace as banged up, twisted, distorted, and bulged out, and as being blackened and smeared with soot and smoke. They also related that the rafters to which the furnace had been attached were soaked with oil, charred and smoke damaged, indicating that a large explosion had occurred and blown oil out of the furnace. As evidence that an explosion had occurred in the furnace it was pointed out that the west wall, near which the heater had been situated, was practically leveled, whereas the other three walls were not as severely damaged; that the position of the rafters and the nearest door indicated an outward and westward exertion of a force from within the building; and that a metal storage cabinet which had been located within the building was found on the outside, up on a hill and 20 feet away.

Expert witnesses testified that in normal operation, when the temperature in the building fell below the point at which the thermostat was set an electrical impulse to a relay activated the burner so that oil and air, under pressure, was forced into the combustion chamber; and that the resulting vaporized or atomized oil was ignited by means of a spark which arced between a positive and a negative electrode. Plaintiff's experts noted that soot and debris had accumulated in the firebox, and that the electrodes were covered with carbon which would delay the ignition of the fuel. It was their opinion as experts that the defective condition of the furnace caused it to malfunction in that the spark did not immediately ignite the oil and air that was being forced into the firebox; that an unusual amount of vapor accumu-lated therein; and that when the arc ultimately occurred it resulted in an explosion of sufficient force to destroy or damage the building. While an inference may be drawn that one or two of plaintiff's three experts were of the opinion that a secondary explosion may have occurred from vapor which had seeped out of the firebox, all three agreed that the initial explosion took place within the combustion chamber of the furnace. That fact was copper-riveted when Swinford, one of the experts was asked on cross-examination: "Q. But where with regard to this heater was the explosion? Was it inside the heater or outside or just where was it. A. Your explosion was in the heater itself but as it explodes that is what makes—your burner, I mean your furnace, of that type has what they call a door on it that lets loose whenever it does to let the intense explosion out. And whenever that happens, it puts the explosion over to the other parts of the building." In view of the circumstantial evidence produced as well as the opinions of plaintiff's expert witnesses we believe there was an abundance of evidence to make a submissible case for the jury. The point is ruled against defendant.

The policy contained a "standard" or "union" mortgage clause, as distinguished from an "open" mortgage clause (see Swihart v. Missouri Farmers Mut. T., C. & W. Ins. Co., 234 Mo.App. 998, 138 S.W.2d 9) on behalf "Thomas Stephens, First National Bank in St. Louis * * *." Defendant claims that the mortgagee was an indispensable party. The alleged nonjoinder of the mortgagee, if such was necessary (see Swihart, supra) was first raised in defendant's motion for a directed verdict. Having failed to raise it by motion or answer before proceeding to trial it was waived by defendant. Civil Rule 52.06; Wilson & Co. v. Hartford Fire Ins. Co., 300 Mo. 1, 254 S.W. 266; Bartlett v. De Graffenreid, Mo.App., 305 S.W.2d 906.

In Instruction No. 1, her verdict directing instruction, plaintiff hypothesized the oc-

currence of an explosion within the firebox or combustion chamber of the furnace. Defendant again argues that the evidence did not support plaintiff's theory, and that the court therefore erred in giving the instruction. What we have heretofore said regarding the sufficiency of plaintiff's evidence to make a submissible case is equally applicable to this point.

Defendant's concluding assignment is a five-pronged attack on Instruction No. 7, plaintiff's instruction on damages. By way of background it should be stated that plaintiff alleged in her petition that her building had been " * * * destroyed by an explosion resulting in a complete loss thereof", and she prayed for a judgment for $6800, the full amount of the coverage. Presumably she tried her case on the theory that she had sustained a "total loss" within the meaning of those words as applied to insurance (i. e., when a building has lost its identity or character as such, though a wall or other parts thereof may remain, O'Keefe v. Liverpool, L. & G. Ins. Co., 140 Mo. 558, 41 S.W. 922, 39 L.R.A. 819), for her evidence tended to establish that fact. Thus plaintiff testified that the building was worth $8,000 or $8,500 at the time she purchased the insurance, on November 17, 1958; that the only salvage realized was $25 for the furnace; and that it cost her money to have the material and rubble hauled away. Plaintiff further testified that she had overheard a telephone call made by one Bollier, an adjuster sent to the scene by defendant on March 10, in which Bollier advised defendant that " * * * this is quite an explosion, it's a complete loss.' " Also, plaintiff's witness Loomstein, a building contractor, was asked to give his opinion of what it would cost to rebuild the same kind of structure " * * * assuming further that you are going to rebuild that building using the same concrete floor and the same foundation but you are going to rebuild everything else in it * * *." His answer was that it would cost between $8,000 and $9,000. On cross-examination

Loomstein stated that in giving those figures he had not excluded the foundation and concrete floor, and that those items would cost approximately $600 and $960 respectively, a total of about $1560. Defendant introduced no evidence of its own regarding the value of the building, nor any evidence as to the cost of repairs or replacement. The plaintiff introduced in evidence the policy sued on, which contained a co-insurance clause. By that provision plaintiff agreed, in consideration of a lower premium, to maintain at all times contributing insurance of 80% of the actual cash value of the buiding at the time of the loss " * * * and that failing to do so, the Insured shall to the extent of such deficit bear his, her or their proportion of any loss." The insuring clause of the policy provided that the defendant insured plaintiff " * * * to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss * * *." Plaintiff also introduced in evidence a brochure prepared by defendant prior to the time the policy was purchased, in which it was stated that "After a survey of your property it is our opinion that your insurance program be set up on the basis of a minimum value of * * * $13,000 for Rear 1220 North and South Road. These figures are not represented as an appraisal and may not be the present value of your property. We recommend an appraisal be obtained from a qualified independent appraisal company."

In this state of the record plaintiff offered and the court gave Instruction No. 7, her instruction on damages. By that instruction the jury was told that if it found for the plaintiff under Instruction No. 1 it should render a verdict in such an amount as it found from the evidence was the amount of damage plaintiff's building suffered as a direct result of the "occurrence" mentioned in the evidence, but not to exceed

$6800; but if it found that the building was totally destroyed then " * * * your verdict must be in the amount of $6,800.00 * .* *." Thus plaintiff submitted the issue of damages on alternate theories of a partial loss and a total loss. As stated, defendant attacks the foregoing instruction on five grounds. The first is that by the use of the word "occurrence" instead of that of "explosion" the jury was given a roving commission to award damages to plaintiff regardless of what caused the loss. But the instruction was predicated on and referred to Instruction No. 1, which required the jury to find that the building was damaged as the result of an explosion within the firebox or combustion chamber of the furnace. Furthermore, on defendant's behalf the court gave Instruction No. 2, by which the jury was told that if it found that the damage to plaintiff's property was not caused by an explosion as defined in Instruction No. 1 then plaintiff was not entitled to recover: and its verdict must be in favor of defendant. When all of the instructions are considered together, as they must be, we do not believe that the jury could have been misled or confused by the word occurrence; particularly when the divergent theories of the parties regarding the cause of the collapse of the building were so sharply drawn and developed by their conflicting evidence.

■ Defendant's second and third complaints regarding Instruction No. 7 may be considered together. Defendant points to that part of the instruction which told the jury that if it found that the building was totally destroyed its verdict "must" be for $6,800, and criticizes, first, the mandatory form of the direction; and second, the failure to give defendant the benefit of depreciation. There was no evidence offered by plaintiff as to depreciation, (or by defendant) as there was in La Font v. Home Ins. Co., 193 Mo.App. 543, 182 S.W. 1029, cited by defendant. In any event the irrefutable answer to both of defendant's complaints is that whatever their merit, they are purely academic. As defendant

concedes in its brief, the jury obviously found that the loss was partial, not total, for despite the mandatory nature of that part of the instruction it returned a verdict for only $5,000. If that part was erroneous the error was harmless, and defendant was not prejudiced.

■ Defendant's fourth and fifth claims of error may likewise be considered together. The former is that, as to a partial loss, the instruction should have incorporated the difference between the before and after values as the measure of damages. The latter is that the instruction ignores the 80% co-insurance clause contained in the contract. It must be conceded that there is some merit to defendant's criticism of this part of the instruction. It is true that the general rule as to the measure of damages to realty is the difference in value before and after the injury. Brown v. Pennsylvania Fire Ins. Co., Mo. App., 263 S.W.2d 893, although for a possible corollary to that rule, where the cost of restoration is less than such difference, see Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158; and Beaty v. N. W. Electric Power Cooperative, Inc., Mo.App., 296 S.W.2d 921. Further, the instruction by appropriate language should have required the jury to find that the plaintiff had insured the property up to at least 80% of its value. But there is an " * * * 'abundant authority in this state to the effect that where the damages awarded are not excessive and fairly represent the damages shown by the evidence, an erroneous or inaccurate instruction upon the measure of damages will not (necessarily) constitute reversible error.' * * * " La Plant v. E. I. Du Pont De Nemours & Co., Mo.App., 346 S.W.2d 231, quoting from Blydenburgh v. Amelung, Mo.App., 309 S.W.2d 150. And to the same effect see Mercer v. Millers' Mut. Fire Ins. Ass'n, Mo., 249 S.W.2d 402. The hotly contested issue in the case was the nature and origin of the force which caused the building to collapse. Practically all of the evidence was devoted to that issue. Once that

question was resolved the only remaining issue was the amount of plaintiff's recovery. The defendant concedes in its brief that there was *some* damage. Having contended that the building collapsed from its faulty construction and the weight of the snow defendant could hardly do otherwise. Mercer v. Millers' Mut. Fire Ins. Ass'n, supra. Defendant made no contention, here or in the trial court, that the verdict was excessive. La Plant v. E. I. Du Pont De Nemours & Co., supra. Plaintiff's uncontroverted evidence showed that the building had a value of $8,000 or $8,500 before the injury, and little, if any, value thereafter. At a valuation of $8,500 the $6,800 policy purchased from defendant satisfied the co-insurance clause. Defendant points to the brochure in which it mentioned a figure of $13,000, but it ignores its own statement therein that that figure was not represented as the appraised value of the building. While Instruction No. 7 may have been technically inaccurate it obviously " * * did not cause the jury to apply an improper rule in arriving at the amount of the damages. * * *" and upon the whole record " * * * there was no error committed by the trial court against the appellant materially affecting the merits of the action. * * *" Mercer v. Millers' Mut. Fire Ins. Ass'n, 249 S.W.2d 407, unless such an error is shown we may not reverse a judgment. Civil Rule 83.13(b). Flanigan v. City of Springfield, Mo., 360 S.W.2d 700; Mercer v. Millers' Mut. Fire Ins. Ass'n, supra.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, (Acting) P. J., ANDERSON, J., and FRANK D. CONNETT, Jr., Special Judge, concur.